IN ERROR.
·······
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

Chancery, in this cause, be affirmed, and that the appeal be dismissed; and that the appellant pay to the respondents their costs in defending this appeal, to be taxed, and that the record be remitted to the Court of Chancery, to the end that this decree may be carried into execution."

Decree of affirmance.

---

JOHN B. MURRAY and JAMES B. MURRAY, Appellants,
*against*
JOHN G. COSTER, LEWIS LARUE, and JOSEPH SANDS, *Assignees of the Columbian Insurance Company*, Respondents.

Where there is a joint purchase of goods, and one of the purchasers takes the whole goods, and agrees to account to the other for his share of them, or of the nett proceeds, and to charge no commissions in case of sale, this is not "a trade of merchandise, between merchant and merchant and merchant, their factors, or servants," within the meaning of the exception in the statute of limitations. And where a bill in equity was filed for an account against the party who had received and sold the goods, after a lapse of six years, the statute of limitations was held to be a good plea : for it is not the case of a technical *trust*, of which a Court of Chancery has peculiar and exclusive jurisdiction. Nor are the defendants, in that sense, to be considered as trustees ; for the plaintiffs had a perfect remedy, at law, against them.

The statute, in such case, begins to run from the time the plaintiffs demanded of the defendants their share of the goods, or the proceeds ; and the defendants having rendered an account of the sale, the right of action was then perfect.

But where the defendants, in their answer accompanying the plea, admitted that they had not been called upon to pay to the plaintiffs, their proportion of the proceeds, during six years prior to the suit ; and that, to avoid litigation, they had, through their counsel, offered to pay to the plaintiffs, their share of the proceeds, without interest ; but, at the same time, insisted that they were discharged, by length of time, from all liability, and expressly reserving their right to avail themselves of the statute of limitations, in case the offer of settlement was refused : *Held*, that this was such an acknowledgment and admission of the debt, as defeated the operation of the statute.

APPEAL from the Court of Chancery. The bill in the Court below was filed *June* 23, 1821. *The Columbian Insurance Company* insured 10,000 dollars, on sugars, on board the ship *Egeria*, from *New-York* to *St. Petersburgh* or *Archangel*. The voyage having been broken up at *Copenhagen*, the cargo was abandoned to the insurers, who paid the loss, and the property was assigned to them, by the insured, on the 3d *May*, 1811. The sugars were sold, and the proceeds received by *George Dickinson*, agent of the insurers, at *Copenhagen*. In the summer of 1813, *G. D.*, as agent of the insurers, and *James B. Murray*, acting for the

appellants, merchants, under the firm of *John B. Murray & Son*, made a joint purchase of thirty-five boxes, or cases, of linens at *C. G. D.* advanced one third of the purchase money, out of the proceeds of the sugars; and it was agreed, between *G. D.* and *James B. M.*, that the linens should be shipped on the joint account of the persons interested therein; and the insurers, as owners of the sugars, were entitled to one third of the proceeds, or that proportion of the goods, paying one third of the expenses. And it was agreed, that if the linens were sold by the house of *J. B. M. & Son*, no commissions were to be charged on such sale. The linens were shipped, under the direction of *James B. M.*, for the *U. S.*, and arrived in safety, and were delivered to the appellants; who sold the goods, and received the proceeds. On, or about, the 1st *June*, 1814, the respondents presented to the appellants an order, from *G. D.*, for the delivery, to them, of one third of the linens, or, if sold, one third of the proceeds. The defendants admitted the receipt and sale of the linens, and, a few weeks after the presentment of the order, rendered an account of sales, charging 1001 dollars and 25 cents, for insurance, and 1153 dollars and 7 cents, for commissions; which charges, the bill alleged, were unwarrantable and unjust, as no insurance was effected, and, by the agreement between the agents of the parties, no commissions were to be charged. The respondents objected to the charges, but the appellants refused to pay over, or account for any part of the proceeds of the linens, unless the charges for insurance and commissions were allowed. That the appellants, immediately after receiving the proceeds, applied the same to their own use, and have always mingled the moneys arising from the sale with their own money, and employed the same in their own business. That frequent applications were made to the appellants, for payment, which proved fruitless; and in *May*, 1821, the respondents made a final application, stating to the appellants, that they had directed their solicitor to prosecute their claim. That the appellants then proposed an interview between the counsel of the parties; that the interview took place, and, after repeated negotiations, the counsel for the appellants proposed that they should pay to the

IN ERROR.
........

ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

IN ERROR.
.......
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

respondents, the principal of one third of the proceeds of the linens, without interest ; but the respondents declined accepting the proposal.

The appellants pleaded the statute of limitations, in bar of the respondents' claim ; and in their *answer*, they denied that they had within six years prior to filing the bill, made any offer, tender, promise, or agreement, to pay to the respondents, any sum of money whatever, for, or on account of the said linens, or in any wise to account concerning the same; except only, in respect to the negotiation between the counsel of the parties, as afterwards stated by them. And they said further, that during the period of six years, prior to filing the respondents' bill, they were never called upon by the respondents, or by any person in their behalf, to pay or account for the proceeds of the said linens; and they had no reason to suppose that the respondents, or any person invested with the rights of the *Columbian Insurance Company*, would have accepted the proceeds of the said linens ; but they were given to suppose, and did suppose, that the respondents intended to press against the appellants a claim for not proceeding in the voyage of the ship *Egeria*, to *Russia*, on the ground that the same was unnecessarily broken up at *Copenhagen*, &c. They admit, that, on the 26th *April*, 1821, their counsel wrote a note to the respondents' counsel, stating that they were instructed by the appellants, to ask of the respondents a statement, in writing, of their claim, and that, being anxious to avoid litigation, they instructed their counsel to offer the respondents' counsel, to pay one third of the proceeds of the linens, without any deduction for commissions, and which offer was accordingly made ; but that the appellants' counsel, at the same time, expressly insisted, that the appellants were discharged from all liability to the said claim, by the lapse of time, and by virtue of the statute of limitations ; and that the offer was made under a reservation of their right to avail themselves of the statute, in their defence against the claim, in case the offer should be refused.

And they expressly denied, that they had, at any time, within six years before filing the bill, in any manner, made any offer, promise, or admission, express or implied, to the respondents, or any other person interested, in relation to

the said linens, or the proceeds thereof, except as above set forth.

IN ERROR.
.......
ALBANY,
Nov. 1822.
MURRAY
v.
COSTER.

The cause was heard on the pleadings; and the Chancellor, on the 11th of *December*, 1821, made a decretal order, " that the said plea, and the answer accompanying the same, be overruled; and that the defendants put in a full and perfect answer to the bill, within four weeks," &c. And from this decree, an appeal was entered to this Court.

The CHANCELLOR assigned his reasons for the decree, for which see 5 *Johns. Ch. Rep.* 522. S. C.

*R. Sedgwick*, for the appellants, contended, 1. That this case did not come within the exception in the statute of limitations, (1 *N. R. L.* 184. sess. 24. ch. 183. s. 5.) of actions concerning the trade of merchandise, between merchant and merchant, their factors or servants : and such, after a very full examination of the cases, was the opinion of the Chancellor, in the Court below. 2. Can this, then, be regarded as a *trust*, and so forming an implied exception to the statute ? Though the term *trust* is not to be taken in too broad a sense; yet, there are many trusts which clearly fall within the statute; thus, loans of money or goods, and bailments of various kinds, are trusts. The case of *Godfrey* v. *Saunders*, (3 *Wilson*, 94.) was a suit at law, and the question, whether it was such a *trust* as did not come within the statute, could not arise ; so, the case of *Stiles* v. *Donaldson*, (2 *Dallas*, 264.) has no relation to a *trust*, properly speaking, but is applicable merely to the first point, whether it was an action concerning trade of merchandise, between merchant and merchant. In equity, the statute of limitations does not apply to an express or direct trust; (1 *Madd. Ch.* 365, 366. 3 *Johns. Ch. Rep.* 216.) though the Court of Chancery may adopt and apply it to equitable demands, in cases analogous to those in which it is applied at law. (2 *Madd. Ch.* 244. 10 *Vesey*, 466, 467.) Length of time may be pleaded to *implied* trusts. (17 *Vesey*, 96, 97.) Where the statute of limitations might be pleaded to an action at law, it is a good bar in equity. The case of *Martin* v. *Delboe*, (1 *Mod.* 70. S. C. 1 *Vent.* 90.) shows, that the present case is not a trust. (2 *Mod.* 311, 312. 6 *Vesey*,

IN ERROR.
· · · · · · ·
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

580, 585.  15 *Vesey*, 198. 205. 209.  2 *Atk.* 610.)  Executors and administrators are trustees, yet the statute of limitations applies to them.  (*Leigh* v. *Thomson*, (1 *Barnw. &*
*Ald. Rep.* 625.)  But in case of a legacy, for which the legatee cannot sue at law, the doctrine as to trusts applies, and this marks the distinction.  For, where there is a remedy at law, the statute may be pleaded.

The counsel also cited and commented on the following authorities :  1 *Equ. Cases Abr.* 304. tit. *Limitations*, A. 4 *Bac. Abr.* 473. tit. *Limitation of Actions*, D. 2.. 3 *Johns. Ch. Rep.* 190.  1 *Merivale's Rep.* 495.  3 *Johns. Cases*, 384.  *Prec. in Ch.* 518.  3 *Mass. Rep.* 201.  1 *Taunt.* 571.  12 *Mod.* 444.  1 *Bl. Rep.* 453.  5 *Binney*, 573. 11 *Johns. Rep.* 146.  15 *Johns. Rep.* 511.  8 *Cranch*, 72. 1 *Sergt. & Rawles' Rep.* 179.  11 *Mass. Rep.* 452.  13 *Johns. Rep.* 288.  3 *Camp. N. P. Rep.* 33.

*G. Griffin*, contra, made the following points.  1. That this was an action concerning the trade of merchandise, between merchant and merchant, their factors and servants, and excepted from the operation of the statute of limitations.

2. That the appellants are trustees, and their claim relates to the execution of a trust, and, therefore, not within the statute.

3. That the answer accompanying the plea, denies that any demand was made on the appellants, until just before the respondents filed their bill ; and, no cause of action accruing until a demand was made, the statute did not, until that time, begin to run.

4. The answer of the appellants virtually acknowledges, that the claim made and stated in the bill, is a subsisting and unsatisfied demand, and so avoids and defeats the operation of the plea.

5. That the answer did not fully and particularly deny the charges made in the bill, forming an equitable bar to the operation of the statute ; and was, in other respects, insufficient.

He said, that it was not necessary to enlarge on the first point, which might be considered as questionable, being embarrassed with so many conflicting decisions.

As to the other points, he cited and commented on the following authorities: *Mitf. Pl.* 221. 3 *Johns. Ch. Cases*, 216. 1 *Fonbl. Equ.* 330. note. 3 *P. Wms.* 143. 2 *P. Wms.* 144. 9 *Mod. Rep.* 32. 1 *Bro. C. C.* 554. 3 *Johns. Ch. Rep.* 190. 1 *Meriv. Rep.* 495. *Prevost* v. *Gratz*, 6 *Wheat. Rep.* 481. 2 *Sch. & Lefr.* 633. 15 *Viner's Abr.* tit. *Limitation*, E. 2 *Freeman's Rep.* 156. 2 *Ventris*, 345. *Bunb. Rep.* 213.

IN ERROR.
⋯⋯⋯
ALBANY,
Nov. 1822.
MURRAY
v.
COSTER.

There never was, probably, a case like the present. The appellants, on the record, and on oath, admit that they owe the respondents the money, and that it has never been paid. The *spirit*, surely, of the statute, can never be made to extend to such a case. (4 *East*, 599. 604. note. 16 *East*, 419. 1 *Dick. Rep.* 153. 7 *Taunt.* 612.)

*J. O. Hoffman*, in reply, said, that every plea of the statute of limitations does, in effect, suppose the existence of a debt; but it shows, that by the statute, the plaintiff's remedy is gone. If the doctrine which is contended for, that the appellants are *trustees*, and, therefore, the statute does not apply, be well founded, then there is hardly any transaction between man and man which does not come within its scope. Every man in his dealings with another, is, in some sort, a " factor or agent." But is a factor or agent such a *trustee*, that he is not to be affected by the statute? In *Sturt* v. *Mellish*, (2 *Atk.* 610. 612.) a case not noticed by the Chancellor, Lord *Hardwicke* decides this very question. He says, " I agree, if it is a trust, it would not be within the statute; but there is no colour to call it so here; for a trust is, where there is such a confidence between the parties, that no action at law will lie, but is merely a case for the consideration of this Court; and every bailment might as well be said to be a trust as this." To this authority is opposed a short note of a case in the Exchequer, from *Bunbury's* reports, a book of no authority. No doubt, in cases of pure trusts, which are the creatures of a Court of equity, and where there is no action at law, the statute does not apply. The action of *account* is expressly mentioned in the statute; and that is an action which lies against a factor or agent. So *assumpsit* lies, in most cases.

IN ERROR.

ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

where there is a promise to account. Though the statute may not, in terms, apply to a Court of equity ; yet, it has been virtually adopted in Chancery, and Courts of equity consider themselves bound, in obedience to the statute, to consider equitable rights, in all analogous cases, as bound by the same limitation.

SPENCER, Ch. J. The questions raised on the argument, are :

1. Whether this is a case coming within the exception in the statute, as concerning the trade of merchandise between merchant and merchant, their factors or servants ?

2. Whether the appellants are trustees ; and whether the claim upon them relates to the execution of the trust ; and, therefore, not within the statute ?

3. From what time the statute begins to run ; whether from the demand of payment, in 1821, or from the time the sales were completed, and the rendering the account thereof, on the 8th of *July*, 1814 ?

4. Whether the answer admits the claim to be subsisting and unsatisfied, and thereby defeats the operation of the statute?

1. The Chancellor has examined the first question very elaborately, and his conclusion upon the whole is, that assuming the case before him to be one that concerned the trade of merchandise between merchant and merchant, the statute was well pleaded, and the case does not fall within the exception. In the case of *Ramchander* v. *Hammond*, (2 *Johns. Rep.* 200.) the Supreme Court decided, that although there was a verbal difference between our statute of limitations and the statute of *James* I., yet that our statute, in a case concerning the trade of merchandise between merchant and merchant, must be confined to actions on open or current accounts, and that the exception did not extend to accounts stated. That case did not call for a decision of the question, whether the exception did, or did not, embrace a case where the items were all on one side. Whether the statute is at all applicable to a case of mutual dealing and mutual credits between merchant and merchant, is a question not now necessary to be decided,

because, the present is not a case of that kind. On the part of the respondents, there is no account at all. This is a case of an account merely on the part of the appellants; there is no selling or trading; it is a case of a joint purchase of goods, where one of the purchasers takes the whole goods, and is to account for one third of the proceeds. In such a case, where the items of an account are all on one side, in my judgment, it is not within the reason or principle of the exception, which must have intended open and current accounts, where there was mutual dealing and mutual credits. I should very much doubt, too, whether an insurance company, whose institution is with very different views and ends, could be considered as a merchant. I concur, therefore, on this point, and, for the reasons I have stated, in the result to which the Chancellor came, that the statute is well pleaded.

2. Is the claim to be considered a *trust,* and are the appellants to be regarded as trustees?

If it be a trust, and if the appellants are to be regarded as trustees, the conclusion is certain, that the statute is no bar. When I say trust, I must be understood as using the term in its technical and legal sense. It is to be observed, that, strictly speaking, the statute of limitations does not apply to a Court of equity. That Court has adopted it as a fit and convenient rule, but with its own restrictions, which are, that in cases of fraud and trust, it shall not apply. The Chancellor, in *Decouche* v. *Savetier,* (3 *Johns. Ch. Rep.* 215.) has gone fully into the subject, and has shown, what indeed could not have been denied, that the statute affords no bar in case of a trust.

The cases cited by the Chancellor, (*Godfrey* v. *Saunders,* 3 *Wilson,* 94. and *Stiles* v. *Donaldson,* 2 *Dallas,* 264.) were not decided upon the principle of a trust, but they turned exclusively upon the question, whether the accounts claimed in the one case, and set off in the other, were barred by the statute of limitations, on the exception in the statute, of accounts between merchant and merchant. If they are entitled to any weight, it is on the point already discussed. In the broadest sense, any confidence reposed by one man in another, is a trust; but we cannot admit this

IN ERROR.
........
ALBANY,
Nov. 1822.
MURRAY
v.
COSTER.

as a criterion of trusts cognizable in equity. If one lends another a sum of money, there is a confidence reposed, that it will be faithfully restored. So, if one man deposit with another his goods and chattels to keep for him, and to be restored whenever they are required, this is a species of trust and confidence. The instances of such trusts might be multiplied to a great extent. In the case of *Sturt* v. *Mellish*, (2 *Atk.* 610.) Lord *Hardwicke*, after stating, that if the case before him was a trust, it would not be within the statute of limitations, observed, there was no colour to call it a trust, for a trust, he said, is where there is such a confidence between parties, *that no action at law will lie*, but was merely a case for the consideration of that Court; and, he added, every bailment might as well be said to be a trust as that. The circumstance on which the plaintiff, in that case, relied, to make the case a trust, was, that he had executed to one *Villa Real*, to whom he was indebted, a letter of attorney, to recover certain sums of money due to him; and the bill was for an account with respect to these demands received by *Villa Real*. This decision is directly opposed to the case of Sir *E. Heath*, and *Henley and others*, (1 *Eq. Cas. Abr.* 303. and 3 *Ch. Rep.* and 1 *Ch. Cas.* 21.) which was the case of a bill exhibited against the prothonotaries of the K. B. to have an account of the money received by them, by an implied trust, *virtute officii*, to which the statute of limitations was pleaded, and the plea was overruled. There is another view of this case, which, I think, must be decisive. I perceive nothing which prevented the respondents from having a perfect and complete remedy at law. They had received the account of sales long anterior to the filing their bill, and the only objectionable charges, were the commissions and insurance. There were no perplexed or involved dealings to be examined into, and the items objected to, were matters of legal inquiry. I am aware, that Courts of equity do take cognizance of matters of account, but not as upon a trust. They do so, because it is supposed, that Courts of law could not give so complete a remedy as Courts of equity; and, by degrees, they have assumed a concurrent jurisdiction. The same relief is given at law, in the action of account, as under a bill in equity.

IN ERROR.
........

ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

The delay at law, has transferred a very considerable portion of this jurisdiction to Courts of equity. One of the grounds of this assumed jurisdiction, of which I do not complain, is, that a discovery is, also, necessary, and that having once acquired jurisdiction, for the purpose of discovery, the Court would entertain the suit for relief. Another ground is, that when the remedy at law is doubtful, or difficult, equity will take cognizance. But when no discovery is necessary, and there is no doubt as to the remedy at law, I cannot think, that it is a case for a Court of equity; and, I have no doubt, had the objection been made in this case, the Chancellor would have dismissed the bill. All, however, I mean to deduce from this consideration is, that it is impossible, in a case like this, where there was ample remedy at law, that the change of the *forum* should produce such a change in the rights of a party; for, beyond all doubt, had the respondents sued at law, the appellants could have pleaded the statute; whether successfully or not, remains to be considered. I have, therefore, no hesitation in saying, that in a case where there is a concurrent jurisdiction in the Courts of common law and of equity, the rule must be the same, and the statute of limitations may be pleaded with the same effect in the one Court as the other. In cases of trusts and fraud, peculiarly, appropriately, and exclusively the objects of equity jurisdiction, according to the established doctrine, the statute cannot be pleaded. I forbear to enforce the opinion I have formed, by attempting to show the impropriety of a different rule, for I think it must be obvious, as applied in the different Courts, in a case of concurrent jurisdiction; and my conclusion is, that this is not such a trust, as to preclude the plea of the statute of limitations.

3. The third point gives rise to the question, whether a demand of payment was necessary prior to the institution of a suit, and whether the right of action then first accrued. It cannot be doubted, that when the right of action became perfect, from that period the statute began to run.

As has been already stated, the bill charges, that on or about the first of *June*, 1814, the respondents' presented to the appellants an order from *Dickinson*, and demanded the

equal third part of the linens, or, if sold, the third part of the proceeds thereof; that the appellants admitted they had sold the linens, and in a few weeks after the presentment of the order, the appellants rendered an account of the sales, a copy of which makes part of the case. These allegations are not denied in the answer accompanying the plea, and must, therefore, certainly, as regards the respondents, if not as regards the appellants, be taken to be true. The answer denies any accounting within six years prior to filing the bill, which was on the 23d of *June*, 1821, and virtually admits rendering the account as alleged. This demand of the goods, or the proceeds, (the goods having been sold,) if even a demand was necessary, gave the respondents a complete right of action; (1 *Taunt*. 571. 2 *Taunt*. 323.) and from that time the statute began to run; and this was more than six years prior to filing the bill.

4. The fourth point is, whether the answer admits the claim to be subsisting, and unsatisfied, and thereby defeats the operation of the statute. In *April*, 1821, the appellants, through their counsel, offered the respondents' counsel, to pay them one third of the proceeds of the linens, without deducting therefrom (or in other words giving up) the charge for commissions, explicitly stating, however, at the same time, that they were discharged from all liability by virtue of the statute, and that they reserved a right to avail themselves of the statute in their defence, if the offer was refused. Now, the question is, whether the admission of the existence of the debt, and that it had never been paid, under the circumstances of the case, is a waiver of the statute. After a review of the cases upon this subject, and particularly those decided in the Supreme Court, I am of opinion, that the distinct admission in the answer, that the appellants never were called upon by the respondents to pay or account for the proceeds of the linen, and that they had no reason to suppose that the respondents would have accepted the proceeds, together with the offer of payment, by the appellants, in 1821, renders them liable to pay the respondents, and defeats the operation of the statute. In the case of *Sands* v. *Gelston*, (15 *Johns. Rep*. 511.) I delivered the opinion of the Court, and, as the case shows, contended suc-

cessfully against the correctness of many of the cases, upon the construction of the statute, decided in *Westminster Hall.* It was my anxious desire to rescue the statute from decisions which were pressed upon us, but which were not binding further than they comported with a just and sound interpretation of the statute. I considered the statute of limitations as the law of the land, and intended as a shield against stale and dormant demands, founded on the probability that, after the lapse of time limited by the statute, the party may have lost the evidence necessary to his defence. And, in that case, I observed, that I was " bound, by authority, to consider the acknowledgment of the existence of the debt within six years before the suit brought, as evidence of a promise to pay the debt." In the case of *Sands* v. *Gelston,* the whole amount of the defendant's admission was, that the plaintiff had never received what he claimed as a debt, and that if the defendant believed he had a claim in law or equity, he would submit the matter to reference, or compromise it ; *but that, in his opinion,* the plaintiff had no such claim, and he was not entitled to it in law or equity, and therefore he would neither submit nor compromise. The Court were unanimously of opinion, that this was not such an acknowledgment of the existence of a debt, as to authorize an inference that the defendant had promised to pay it within six years ; because, the defendant denied his liability, and denied the justice of the debt, either in law or equity ; and I concluded my opinion in that case, by observing, " That, though, indeed, the defendant may admit, that what the plaintiff claims as a debt has never been paid, if he protests against his liability, it would be an outrage on common sense to infer a promise to pay, in the face of his denial of his liability to pay." But how stands this case ? The appellants, after six years, offer to pay the whole demand, except the charge for insurance and interest. To be sure, they accompany that offer, with an assertion, not that they did not owe the debt, or that it ever had been paid, or denying the justice of the claim, but that if the offer was not accepted, they would rely on the statute of limitations. It will, at once, be seen, there is a total dissimilitude between this case and that of *Sands* v.

IN ERROR.

ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

*Gelston,* and of *Lawrence* v. *Hopkins,* (13 *Johns. Rep.* 288.) and *Danforth* v. *Culver,* (11 *Johns. Rep.* 146.) In none of those cases, was the existence, or justice of the debt admitted; on the contrary, they were denied. The case of *Bryan.* v. *Horseman,* (4 *East,* 599.) bears strong analogy to the case before us. It was proved, there, that the defendant said, " I do not consider myself as owing Mr. *Bryan* a farthing, it being more than six years since I contracted. I have had the wheat, I acknowledge, and I have paid some part of it ; and 26 pounds remains due." Lord *Ellenborough* said, they had looked into all the authorities, and whatever their opinion might have been, had the question been new, yet, after the long train of decisions, it was necessary to abide by the construction which had been put upon it, in conformity with which, they thought themselves bound to hold, that what was said by the defendant was a sufficient acknowledgment of the pre-existing debt to create an *assumpsit,* so as to take the case out of the statute. In *Leaper* v. *Tatton,* (16 *East,* 419.) it was proved, that the defendant, when applied to for payment, said, " he had been liable, but was not liable then, because the bill was out of date ; the witness told him, the plaintiff would take the money by instalments ; the defendant said, he would not pay it, it was not in his power to pay it." Lord *Ellenborough* said, that, as the limitation of the statute is only a presumptive payment, if his own acknowledgment, that he has not paid it, be shown, it does away the statute. *Bayley,* Justice, said, acknowledging his acceptance, and that he has not paid it, created a debt. Many other cases, some of which, I admit, push the subject to an unreasonable and extravagant length, might be cited, where the slightest acknowledgment, or even writing an equivocal letter, have been held to take the case out of the statute. In *Coltman* v. *Marsh,* (3 *Taunt.* 380.) the proof was, that the defendant said, " I owe you not a farthing, for it is more than six years since." The Court held, very correctly, that it was no evidence of a new promise. In the case of *Rowcroft* v. *Lomas,* (4 *Maule & Selw.* 457.) which was commented upon in *Sands* v. *Gelston,* the defendant was sued on an accountable receipt, and it was proved, that when it

was shown him, and he was asked if he knew any thing of it; he said he knew all about it; it was not worth a penny, and he should never pay it. He admitted his signature, and that he had never paid it, and never would, and added, besides, it is out of date, and no law shall make me pay it. Lord *Ellenborough*, in delivering the opinion of the Court, that this did not take the case out of the statute, distinguishes, with great force, between that case and *Bryan* and *Horseman*. The cases, he said, have determined, that a debt, the existence of which is extinct through lapse of time, may be revived, by an acknowledgment, that it is unsatisfied; but there must first be an acknowledgment that it ever existed. Almost all the cases, he observed, upon this subject, go upon the same ground as *Bryan* and *Horseman*, where the defendant stood upon the statute, it being more than six years since he contracted; but, in the same breath, acknowledged he had had the wheat, and had paid only in part for it, and that part remained due. Every thing, he said, which the defendant then alleged, went to admit, in distinct language, the original foundation of the debt; only as to some part of it he stood upon the statute, on account of the lapse of time, the presumption arising from which was rebutted, by his admission that a part was unpaid. *Bayley,* Justice, in commenting on the case of *Bryan* and *Horseman*, said, that the defendant relied on the statute of limitations, but, in the same breath, admitted that 26 pounds were due; therefore, he had taken a wrong view of the statute, because the statute was not intended to protect a party from a debt acknowledged to be existing, but only where the presumption arising from the lapse of time is, that it never did exist, or, if it did, that it has been discharged; therefore, he says, when the defendant, in that case admitted the debt, he admitted that this was a case, to which the statute, according to its spirit, did not apply. In the case of *Mountstephen and others* v. *Brooke and others*, (3 *Barnw. & Ald.* 141.) the defendant was a party to a covenant in a deed to a third person, which recited, within six years, the debt to be outstanding and unsatisfied. *Abbott*, Ch. J., said, the statute was passed to protect persons who were supposed to have paid the debt, but to have lost the evidence of such pay-

IN ERROR.

ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

IN ERROR.
.......
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

ment; here, however, (he observed,) there is no such thing, for there is a solemn acknowledgment of the existence of the debt within the six years, the legal effect of which is, to raise, of itself, a promise to pay the debt; and when we consider that a Court of equity is not bound by the statute, but have adopted it from analogy, and as a reasonable rule, this reasoning appears to me forcible and conclusive, and it directly applies to this case. Indeed, the case before us is a much stronger one, for the appellants have never asserted, that they did not owe the debt according to the account rendered, or that a cent of it had been paid; but they distinctly admit the justice and existence of the debt, and offer to pay it, and even to deduct the commissions which they had charged. In such a case, it is impossible to consider the statute as a bar, consistent with all the cases on the subject; and my conclusion is, that the decree ought to be affirmed.

PLATT, J:, and WOODWORTH, J., concurred.

VIELIE, Senator. The first question which arises in this cause is, whether it is a case coming within the exception to the fifth section of the statute of limitations, made in favour of " actions which concern the trade of merchandise between merchant and merchant, their factors or servants."

In the consideration of this question, it is important to inquire how far the mutuality of the accounts between the parties, or the necessity of an account current, as distinct from a specific sale of merchandise between merchant and merchant, is material to entitle the party to the benefit of the exception. The decisions in the *English* Courts on the statute 21 *James* I. (ch. 16. sec. 3.) are, in some measure, various, and many of them are, to my mind, very unsatisfactory. The only authority requiring the demands to be mutual, which I have been able to find, is a *dictum* of *Denison*, J. in *Cotes* v. *Harris*, (*Buller's N. P.* 149.) I say a *dictum*, because, by the loose and uncertain report of that case, it does not appear to have concerned the trade of merchandise between merchant and merchant; and although *Denison* J. is made to say, " that the clause in the statute of

limitations extended only to cases where there were mutual accounts, and reciprocal demands between two persons," he also says, " but if there were only a demand by *A.*, against *B.*, in the common way of business, as by a tradesman on his customer, that cannot be called merchants' accounts." From this, I think it is fairly to be inferred, that the case was of the latter kind, that of a tradesman against his customer. And this appears more probable from what Lord *Kenyon*, who furnished the report of this case, says, in *Cranch* v. *Kirkman*, (*Peake's N. P.* 121.)

He there uses the case as authority for extending the benefit of the exception to other persons than merchants ; for, in the very case then under consideration, and to which he applies the authority of *Denison*, J. he overrules the objection, that the exception extends to no other description of persons than merchants.

If my view of these cases be correct, it does not very satisfactorily appear, that the rule requiring the accounts to be mutual, has ever been adopted in *England*, in relation to a case concerning merchants' accounts.

But if such a rule prevailed there, it may well be doubted whether it can properly be applied to cases arising under our statute. By the statute of *James*, " *such accounts* as concern the trade of merchandise," &c. are excepted ; and from this phraseology, *accounts* being used in the plural number, the idea of the rule may naturally have arisen ; but our statute excepts all " *actions* which concern the trade of merchandise," &c. ; and, I apprehend, an action brought by one merchant against another, to recover the value of fifty bales of goods sold, as much concerns the trade of merchandise, as if there had been a reciprocal interchange of goods between them, leaving a balance of fifty bales upon one side or the other. And though the reasons founded upon public policy, and which produced the exception in favour of merchants, may not operate as strongly in the case of an action brought by one merchant against another to recover for a *single* bale of goods sold, still it cannot be denied to be as much within the letter and spirit of the exception, as if there had been fifty bales sold. If the one as immediately concerns the trade of merchandise as the other, why is it not

IN ERROR.
·······
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

as much within the exception to the statute ? The amount is not so great, but principles are not governed by amount. The transaction in one case is not so complex as in the other. But was it the complicated nature of particular transactions, or the exigencies of trade, which, from its very nature, and the multiplicity and extent of its concerns, frequently requires a longer time to close its most simple affairs, than is required in the ordinary affairs of men, that induced the exception to the statute in favour of merchants, not as a particular description of citizens, but as persons engaged in the trade of merchandise? I think the latter.

Whether the cause of action must more immediately concern the trade of merchandise, or may be more remotely related to it, is another question which arises upon this branch of the subject. And here, it would seem to be a position founded in good sense, and sanctioned by authority, that the cause of action must be a direct and immediate concern of trade, and that whenever it is in any degree removed, the benefit of the exception is lost, and it comes within the operation of the statute, so as to be barred by it. Where a note is taken upon the sale of goods, or where an account is stated, and the balance ascertained and settled, it is no longer a concern of trade. The matter being closed, the reasons for the exception, arising from the exigencies of trade, no longer apply, and the cause of action is changed ; for the mere stating of an account, even though a note is not taken, is a merger of the original cause of action, and in that case an action cannot be maintained upon the implied assumpsit arising from the delivery of the goods, but the party must resort to an *insimul computassent.* (1 *Bac. Abr.* 281. tit. *Assumpsit*, G. 1 *Mod.* 205. 2 *Mod.* 43, 44. *Buller's N. P.* 129.) And it may be worthy of remark, that although some of the decisions in the *English* Courts seem to be at war with the statute itself, and some of them are inconsistent with each other, yet most of them, where the statute has been allowed to bar the action, proceed upon the ground, that an account had been stated between the parties.

Thus, in *Webber* v. *Tivill*, (2 *Saund.* 124. 127. note 5.) an account had been stated, and the argument of the counsel

there was, that the remedy had been changed, and the statute applied to the new remedy; and this reasoning was adopted by the Court.    The same principle is recognised by *North*, Ch. J. and *Windham* and *Scroggs*, Justices, in 1 *Mod.* 270. and also in 2 *Mod.* 311, 312.    1 *Mod.* 70.    1 *Lev.* 298.

It is upon this principle, that a distinction has been made between accounts that are open and current, and accounts stated.    The former have been held to be within the exception, while the latter have constantly been held to be barred by the statute.    (*Ballantine on Limitations*, 71.)

When a note, therefore, is accepted for the balance of an account, or the account is stated, and a balance ascertained and agreed upon, the parties voluntarily, and by their own act, abandon the cause of action, which arose from and immediately concerned the trade of merchandise, and put the matter upon the footing of all other demands, for which an action of *assumpsit* will lie, even against a factor or receiver; and in that case the statute becomes a bar as in ordinary cases.

At common law, no limitation of personal actions was known.    (*Co. Litt.* 115.)    And but for the intervention of the statute under consideration, every person, without distinction, might have pursued the legal remedy for his demands, though twenty years had elapsed.    That right still remains to all, unless inhibited by the statute, in derogation of what was before a right common to all.    In its terms, the statute restrains the bringing of certain personal actions to the period of six years from the time they severally accrue; but from this restriction are excepted, " actions that concern the trade of merchandise, between merchant and merchant, their factors or servants.", Every action, then, that falls within this description, being excepted from the operation and effect of the statute, must remain as it stood before, untrammelled by any limitation or fixed period for its commencement.

If this be correct, it is inconceivable, unless through misapprehension, how Lord *Hardwicke*, (2 *Vesey*, 400.) could say, that it was the intention of the statute, " to prevent dividing the account between merchants, where it was a running account, when, perhaps, part might have begun long

before, and the account never settled, and perhaps there might have been dealings and transactions within the time of the statute?" Or how Lord *Northington*, (2 *Eden*, 169.) Lord *Rosslyn*, in *Crawford* v. *Liddell*, (6 *Ves*. 580.) and Sir *Wm. Grant*, in *Barker* v. *Barker*, (18 *Ves*. 286.) could say, that when all the transactions were over six years, the statute might as well be pleaded to merchants' accounts as others? For "merchants' accounts," either were within the exception or not, and if within the exception, most manifestly the six years had nothing to do with them any more than any other period of time that might be supposed. If not within the exception, the six years were an absolute bar in every case.

Had the legislature intended such a construction, how very readily and naturally would the words, *when some of the items come within six years*, have been inserted. The intention would then have been clear and palpable; and the want of something of that, or a like import, is, to my mind, the strongest argument that no such thing was intended.

But when these cases are contrasted with that of *Catling* v. *Skoulding*, (6 *Term Rep*. 189.) decided by Lord *Kenyon*, and the Judges of the King's Bench, it would seem, that between Lords *Northington* and *Rosslyn*, and Sir *Wm. Grant*, on the one hand, and Lord *Kenyon*, Sir *Wm. Henry Ashhurst*, and Sir *Soulden Lawrence*, on the other, the exception to the statute was completely annihilated. For, in the latter case, the Court of King's Bench decided, that where there are some items of mutual accounts within the six years, as between parties not merchants, and in a matter not concerning trade, it is sufficient to take the case out of the statute. Thus, putting the two distinct classes of cases upon the same footing, with this distinction, that in the one case it is put upon the rational ground, that the new items furnish evidence for the jury to presume an acknowledgment of the old, and in the other, all are assumed to be within the exception, because there are some items that have no need of its benefit.

The decision of the Court of King's Bench, in *Catling* v. *Skoulding*, is directly in the teeth of Lord *Northington*, when he says, in *Martin* v. *Heathcote*, that the statute

" would be a bar as to all articles, before six years, in other accounts" than merchants'; and in giving the opinion of the Court, in that case, Lord *Kenyon* lays down the rule distinctly, that the plaintiff is not barred, though there has been no transaction of any kind between the parties for six years before the action brought, if the accounts were between merchant and merchant, &c.; and he assigns the reason, for then the case never was within the statute. It is also worthy of remark, that this opinion of Lord *Kenyon*, though it may be considered in some measure extra judicial, was delivered in 1795, long after all the cases upon the subject, (except the case before Sir *Wm. Grant*, Master of the Rolls, 18 *Ves.* and the case said to have been decided by Lord *Rosslyn*, in 1796,) and upon a review of the cases cited by the counsel, on both sides, which included all the cases upon the subject, except the equally extra judicial opinion of Lord *Hardwicke*, in *Welford* v. *Liddell*, and that, too, inconsistent with his own doctrine fifteen years before, and the case of *Martin* v. *Heathcote*, decided by Lord *Northington*. And it is no slight impeachment of these two last cases, that they were not cited on that occasion.

The opinion of Lord *Kenyon* not only received the sanction of the other Judges, upon due consideration, but is directly supported by *Jones*, *Cooke*, and *Berkely*, Justices, in *Sandys* v. *Blodwell*, (*Jones*, 401.) and by Lord *Hardwicke* himself, in the case referred to in 19 *Vesey*, 180.

This doctrine is conceded in *Godfrey* v. *Saunders*, (3 *Wilson*, 94.) and directly sanctioned in *Stiles* v. *Donaldson*, (2 *Dallas*, 264.) where, though 17 years had elapsed since the date of the last item of the accounts, and no subsequent demand, the Court were unanimously of opinion that the accounts were not within the act of limitations. That was a case of principal and factor.

This doctrine is shaken only, if at all, by the *dictum* of Lord *Hardwicke*, in *Welford* v. *Liddell*, by the case of *Martin* v. *Heathcote*, before Lord *Northington*, to which I have before referred; by the case of *Bridges* v. *Mitchell*, (*Gilb. Equ. Rep.* 224.) in which it is said, that, " if the account be by the plaintiff deserted, then it is barred," but otherwise the ground of decision does not very clearly appear:

IN ERROR.

ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

(but, in another report of the same case, in *Bunbury*, 217, it is stated, that twenty-four years had elapsed after the transaction before suit brought; and if that be correct, it might well have been considered as deserted, and very properly rejected, as a stale demand, without any reference to the statute;) by the case of *Crawford* v. *Liddell*, probably confounded for *Welford* v. *Liddell*, as I can find no report of it, and by the case of *Barker* v. *Barker*, 18 *Vesey*, 286.

This last case I do not consider of much weight, because it appears to have been decided upon a reference to *Welford* v. *Liddell*, and *Bridges* v. *Mitchell*, only; neither of which, in my opinion, bear out the Master of the Rolls in his decision.

The case of *Ramchander* v. *Hammond*, (2 *Johns. Rep.* 200.) in the Supreme Court of this state, was an action upon a promissory note; and to a plea of *non assumpsit infra sex annos*, the plaintiff replied, that the action concerned the trade of merchandise, between merchant and merchant. The defendant rejoined, and to this there was a demurrer and joinder. The Court held the replication bad; and that decision may well be supported by the reasons assigned, that the exception " does not apply to an account stated;" that " it must be a direct concern of trade;" and that " liquidated demands, or bills and notes which are only traced up to the trade of merchandise, are too remote to come within this description." This comes within the principle before stated, of a case, where, by the act of the parties, the cause of action has been removed and changed from an immediate concern of trade, and thereby put upon the footing of ordinary demands. It is true, the Court, in deciding this case, indulge the language, that " the words" (of our statute) " are not so broad as to warrant a departure from the adjudications which have been made on the *English* act." But this remark was not called for by the necessity of that case, and I think we are warranted in supposing that it was made without due consideration; for it would require a degree of flexibility, unusual to our Courts of justice, and which would be to be deprecated, if it existed, to thread the mazy contradictions of those decisions; and the bare attempt to reconcile them, at once, demonstrates the impracticability of the

undertaking, and shows that a departure from some of them is inevitable.

Should the question upon the construction of our statute, now be considered as one of the first impression, and taking its words as standing alone, without regard to the incongruous and contradictory decisions of the *English* Courts, I apprehend it would be difficult to convince any man of sound understanding, that the statute was intended to have any operation upon *an action concerning the trade of merchandise, when it arises between merchant and merchant.*

· And this construction is directly supported by the authority of the Supreme Court of the *United States,* in the case of *Mandeville & Jameson* v. *Wilson,* (5 *Cranch's Rep.* 15.) That was an action of assumpsit, brought in the Circuit Court of the district of *Columbia,* for goods sold and delivered, and for the hire of a slave. The defendants pleaded *non assumpserunt,* and the statute of limitations ; and to the latter plea the plaintiff replied, that the money became due and payable on an account current of trade and merchandise between the plaintiff and defendants, as merchants, and wholly concerned the trade of merchandise. There was a rejoinder, surrejoinder, demurrer, and joinder, but the case turned upon the sufficiency of the replication. · The Court below gave judgment for the plaintiff; and, upon a writ of error, that judgment was affirmed. Ch. J. *Marshall,* in giving the opinion of the Court, says, " that the exception in the statute applied to actions of assumpsit as well as to actions of account. That it extended to all accounts current which concern the trade of merchandise between merchant and merchant. That an account closed by the cessation of dealings between the parties, is not an account stated, and that it is not necessary that any of the items should come within five(*a*) years. That the replication was good, and not repugnant to the declaration, and that the rejoinder was bad." This decision was made on the statute

---

(*a*) Five years is the period of limitation by the statute of Virginia, and this case arose under that statute.

of *Virginia*, which, so far as relates to the present question, is precisely like the statute of *James*.

In the case under consideration, there has been no account stated between the parties, so as to vary or alter the character of the original transaction between them. The appellants did furnish an account, but some of its most prominent items were objected to at the time, and have not since been settled or agreed to. The mere act of furnishing an account, does not make it a stated account, until it has the assent of both parties to its correctness. A different rule would put it in the power of one party, at any time, to impose upon the other a false account, and conclude him by it.

Lord *Hutchins*, in *Sherman* v. *Sherman*, (2 *Vern.* 276.) says, " amongst merchants it is looked upon as an allowance of an account current, if the merchant that receives it does not object against it, in a second or third post ; thus, plainly admitting the right to object. In the account furnished in this case, there is a charge for commission, which is one of the items objected to, and which, by the letter of the appellant, *James B. Murray*, to *George Dickinson*, the agent of the *Columbian Insurance Company*, dated *July* 7, 1813, was expressly stipulated not to be charged ; " it being understood," says he, " that in case of sale being made by my house, no commission is to be charged for such sale."

The remaining branch of this subject, and in relation to which the most serious doubts pressed upon my mind, at the outset of the investigation, is, whether the *Columbian Insurance Company* could be considered a merchant within the meaning of the exception to the statute, so as to be entitled to the benefit of that exception.

Notwithstanding Justice *Atkins*, in *Farrington* v. *Lee*, (1 *Mod.* 270.) expresses an opinion, that " the makers of the statute had a greater regard to the persons of merchants, than the causes of action between them," I cannot but entertain a contrary sentiment. If it were, as Justice *Atkins* supposes, a benefit to the person, why was it not extended to all their transactions, as well to other actions as to those which concern the trade of merchandise ? If it is to the person of the merchant, how long must he have been engaged in the business,

IN ERROR.
........
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

or what proportion of his capital, or his time, must be engrossed by it?

If that construction is correct, the words, " *which concern the trade of merchandise,*" are entirely useless in that clause of the statute; but so far from that being correct, I apprehend they constitute the strength and marrow of the exception, and that the words, " *between merchant and merchant,*" &c., are to be considered as being added for the purpose of confining the exception to concerns that are purely mercantile, and excluding others, such as transactions between a merchant and his customer. It is, then, the business of trade, and not the person engaged in it, that is entitled to the benefit of this exception; or, in other words, the person is entitled to it in respect to that business, and that only, for the encouragement of which the exception was inserted.

Thus, the assignees of a bankrupt merchant, would be as much entitled to the benefit of this exception, in relation to every concern of trade arising out of the affairs of the bankrupt, as the bankrupt himself. So would the representatives of a deceased merchant; and that, whether they had ever been engaged in trade themselves or not.

In the case under consideration, the *Columbian Insurance Company* had insured, for *S. & L. Clarkson & Co.*, a quantity of sugar on board the ship *Egeria*, on a voyage from *New-York* to *St. Petersburgh* or *Archangel*. The voyage was broken up at *Copenhagen*, and the sugars being abandoned to the insurers, as for a total loss, were received by the agent of the company, sold on their account, and the proceeds, either for the purpose of trade, or for the more convenient transmission of the amount to this country, were invested in linens, for which an account is sought by the bill filed in this cause. No one would doubt, that in the hands of *S. & L. Clarkson & Co.*, this would have been purely a concern of trade; and as it is the business which gives character to the merchant, and not the merchant to the business, it can be no less a concern of trade in the hands of the *Columbian Insurance Company*.

Applying the principles before stated to these facts, it strikes my mind, and, indeed, is most satisfactory to my judgment, that, *pro hac vice*, at least, the *Columbian Insu-*

IN ERROR.
........
ALBANY,
Nov. 1822.
MURRAY
v.
COSTER.

*rance Company* must be considered as a merchant, within the meaning of the exception, whatever other business it may have pursued, or different concerns it may have been engaged in. In relation to this matter, it was, in my view, subject to all the duties, and entitled to all the privileges of merchants. The respondents, as assignees, became invested with all the rights and privileges of the company. The appellants may be considered in the light of factors to the company ; and upon the best consideration I have been able to bestow, I have arrived at the conclusion, that this case directly and immediately concerns the trade of merchandise between merchant and merchant, and is, on that account, within the exception to the statute of limitations, and that, therefore, the plea was properly overruled.

I express this opinion under a conviction of the importance of the subject, but with no other distrust than what arises from a diffidence of my own ability to do it justice.

With the consequences of this doctrine, in a judicial capacity, we have nothing to do. It is sufficient for our present purpose, that such is the law ; and if its policy has an evil tendency, which I cannot apprehend, it remains for legislative correction. I consider such of the *English* decisions as contravene the construction I have given to the statute, as little better than judicial usurpation of legislative authority.

On the second question that arises in this cause, which is, whether the claim of the respondents relates to the execution of a trust, so as, on that account, to be exempt from the operation of the statute, it would seem to be unnecessary to dwell, as the decision of either point in the case in favour of the respondents, is conclusive upon the merits of the appeal. But as this second point was chiefly relied upon in the argument, (and as it is by no means certain, that the other members of the Court will agree with me in opinion as to the first,) I shall attempt a brief consideration of it.

To arrive at a correct decision upon this question, the relative situation of the parties is to be ascertained. From the facts disclosed in the bill, and which, for the purpose of the present discussion, must be taken to be true, so far as they are not,

IN ERROR.
........
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

denied by the answers, it appears, that the appellants, and the *Columbian Insurance Company*, became jointly interested, in the purchase made by one of the appellants and the agent of the company, in thirty-five cases of linens, the former as owners of two thirds, and the latter of one third, which were shipped on the joint account of those concerned, from *Copenhagen* to *Gottenburgh*, and thence to the *United States*, where they were received and sold by the appellants, under whose direction they appear to have continued, after the shipment at *Copenhagen*. Were the parties partners in this adventure ? Partners have a mutual and reciprocal control over the whole of the partnership property, and each may dispose, or make sale, of the whole ; but will it be pretended, that the company, at any time, could have sold the appellants' interest in these linens ? The appellants might, and did, lawfully sell the interest of the company, but it was because they were intrusted and authorized so to do. The letter of *James B. Murray*, written at *Copenhagen*, shows, that if not sold at *Gottenburgh*, the goods were to be shipped to this country, and one third of the proceeds of the sale to be received by the agent of the company, or one third of the goods delivered.

A community of interest, in profit and loss, was not in the contemplation of the parties at the time, for a severance of the property was then spoken of, as being in the option of the party, before the adventure should be at an end ; and though there is a joint purchase, yet if each is to manage his share as he judges best, so that the profit or loss of the one may be more or less than that of the other, it is not a partnership. (*Coope and others* v. *Eyre and others*, 1 *H. Black.* 44.)

But these goods were received upon the express confidence, (I refer again to the letter of *James B. Murray*,) that they were to be sold at *Gottenburgh*, and the proceeds accounted for, and, if not sold at *Gottenburgh*, to be shipped to *America*, sold, and the proceeds accounted for, or the goods delivered to order, leaving it to the option of the company to put an end to the trust before sale ; and, in my view of the matter, it is as clear a case of direct trust, as it is possible for the acts of the parties to make, and as much

IN ERROR.
.......
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

so, as though a deed had been made for that purpose, and executed with the most solemn formality. The effect of such a deed, whether relating to real or personal property, could only be to transfer the property, with power to sell, and, if coupled with a power of revocation, before a sale should have taken place, would, in principle, present precisely the present case.

To such a case, it was conceded on the argument, that the statute of limitations did not apply. But a distinction was attempted to be drawn, between direct and implied trusts, to the latter of which, it was contended, this case belonged, if a case of trust at all, and to which, it was also contended, the statute did apply.

Courts of equity may, perhaps, have applied the statute, by analogy, to cases where, by construction of law, the party is placed in the situation of trustee, without his assent, for the sake of the remedy; that is, however, not the case here. The law assigns to the appellants no other situation than what was contemplated by the parties at the time of the transaction; and whether they are called factors, agents, or trustees, can, in my view, make little difference. A factor, though he have the right at law, is, in equity, but a trustee. (2 *Vernon*, 638.)

The case of Lady *Hollis*, (2 *Vent.* 345.) is analogous to, though, perhaps, not so strong as the present. Her ladyship lent £100, and in the note given for it, it was stated, that it should be disposed of as she should direct. The Court held it to be a *depositum* or trust, and decreed payment, though, otherwise, it had been barred by the statute.

In cases, too, more clearly of the character of trusts implied than the present, the statute has been held not to apply, as in *Heath* v. *Henly et al.* (*Ch. Cas.* 20.) where the son and executor of Chief Justice *Heath*, who was made Chief Justice, at *Oxford*, during the difference between the king and parliament, but never sat at *Westminster-Hall*, exhibited a bill against the defendants, who were prothonotaries of the King's Bench, for an account of the money received by them during the time of his being Chief Justice. The statute was pleaded, and the Court, upon argument, held it to be a trust *virtute officii*, and overruled the plea.

So, also, in *Sheldon* v. *Weldman,* (2 *Ch. Cases,* 26.) where the son and executor filed a bill for an account of money received from the father, who gave it him to compound for his estate sequestered for delinquency at *Goldsmith's-Hall,* the Court declared it a trust, and therefore not within the statute.

The claim on the part of the respondents, as presented to the consideration of the Court, addresses itself to the moral sense, in a character of strong and prevailing equity. A technical defence is interposed. There may be facts and circumstances existing, which the nature of the defence does not disclose, and which justify the course to the conscience of an honest man. In judgment of charity, we are bound to suppose that there are; but, whether so or not, it is a consideration which ought not to weigh upon the mind in the decision of this cause. The appellants are entitled to the benefit of their defence, if founded upon the principles that are known to govern a Court of equity.

In no view, however, that the case has presented itself to my mind, and after the most careful investigation which I have been able to give it, does it appear to me, that the plea can be sustained. I am of opinion, therefore, that the order of the Chancellor ought to be affirmed.

This being the opinion of the rest of the Court,* (Hopkins, senator, dissenting,) it was, thereupon, " ordered, adjudged, and decreed, that the decree of the Court of Chancery, in this cause, be affirmed, and that the appeal be dismissed; and that the appellants pay to the respondents their costs in defending the appeal, to be taxed; and that the record be remitted to the Court of Chancery, to the end that this decree may be carried into execution."

Decree of affirmance.

*Henry,* for the appellants, inquired, whether the majority of the members were to be considered as concurring in the

After a cause has been argued on appeal, and a decree of affirmance pronounced, on a point which, though stated in the printed case before the Court, was not much insisted on by the counsel on the one side, or objected to by the other, on the argument, the Court refused, on application of the appellants, to modify the decree, so as to allow them to amend their answer, or file a supplemental answer in the Court below; especially, as it was to help the plea of the statute of limitations, and the answer, accompanying the plea, contained an admission of the debt.

*Margin notes:* IN ERROR. ALBANY, Nov. 1822. MURRAY v. COSTER. * Nov. 12th. For affirming 25. For reversing 1. Nov. 13th & 14th.

IN ERROR.
·······
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

opinion delivered yesterday, by the Chief Justice, in this cause, and on the grounds stated by him, or in the opinion of Mr. Senator VIELIE ; as, in the former case, he wished to make a motion to the Court.

On taking the sense of the members of the Court on this question, it appeared that all of them, except *six*, concurred with the *Chief Justice*, on the point, that the answer of the defendants contained such an acknowledgment and admission of the plaintiff's debt, as to defeat the operation of the statute of limitations, and that, therefore, the statute was no bar to the plaintiffs' claim.

*Henry*, and *R. Sedgwick*, for the appellants, then moved for a rehearing, or a modification of the decree, or that the cause might be sent back to the Court of Chancery, without prejudice, on the point on which the Court had grounded their decision, so that the defendants might amend their answer, or file a supplemental answer, showing, that there was no such admission, or, if made, that it was confidential, and made between counsel, for the sake of peace, and during a negotiation for a compromise, and could not, therefore, prejudice their legal or equitable rights, when the compromise was rejected. They read several affidavits as to that fact. To show that the appellants had a right to amend, they cited *Coop. Equ. Pl.* 338. 6 *Vesey,* 587, 580. *Mitf. Pl.* 261. *Hind's Pr.* 416. *Beames's El. Pl.* 319, 320. 4 *Bro. P. C.* 640. 642. 4 *Johns. Ch. Rep.* 377.; and that even after hearing and a decree. (2 *P. Williams,* 427.) That this point, not having been argued or decided in the Court below, could not now be decided upon here. (18 *Johns. Rep.* 558, 559, 560.) The offer being made by counsel, for the sake of peace, cannot be allowed to prejudice the rights of the appellants. (13 *Johns. Rep.* 288. *Peake's N. P. Cases,* 6. 2 *Camp. N. P. Cases,* 106. and note. *Bull. N. P.* 336. 1 *P. Wms.* 497.)

*Griffin*, contra, said, that the case of *Beekman* v. *Frost,* (18 *Johns. Rep.* 544. 558.) showed merely, that where a new point is taken, in this Court, for reversing the decree, it will not be heard ; it is otherwise, where the new ground is

IN ERROR.

ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

taken in affirmance of the decree, and, more especially, where a new reason merely is assigned in support of the decision of the Court below. That he did not, in his argument, enlarge on the *fourth* point, because he conceived, that the strength of the respondents' case did not rest upon it. One of he counsel, (Mr. *Hoffman*,) had, in his argument, referred to the negotiation between the counsel, but without suggesting that it was confidential. The whole of the negotiation is stated in the answer, and appears in the printed case. Was it not set forth in answer to the bill? If it was purely confidential, which he denied, the defendants were not bound to answer that part of the bill at all. Will an amendment, after a decree, be allowed, in order to let in the statute of limitations? Will a Court of appeals permit such an amendment to be made? But, independent of the admission of the appellants, in the negotiation, they have made a sufficient acknowledgment of the existence of the debt. They state, in their answer, that during the period of six years prior to the filing of the bill, they were never called on by the respondents, or any person in their behalf, to pay or account for the proceeds of the linens, or any part thereof; but, on the contrary, they had no reason to suppose, that the respondents, or any other persons invested with the rights of the *Columbian Insurance Company*, would have accepted the proceeds of the said linens, or any part thereof; but that the appellants were given to suppose, and did suppose, that the respondents, acting in behalf of that company, intended to press against the appellants a claim for not proceeding in the voyage of the ship *Egeria*, on the ground that the same was unnecessarily broken up and relinquished in *Denmark*. That, in *January*, 1821, they were informed, that the respondents, as trustees of the *Columbian Insurance Company*, intended to prosecute them for damages, for not having duly prosecuted the voyage of the *Egeria*; and that, becoming alarmed by the threat of a prosecution, which might involve responsibilities to a great amount, &c., they set about preparing their defence, &c. And again, they say, that before the filing of the respondents' bill, they were applied to by one of the respondents, in behalf of the

*Egeria* claim, but that he did not intimate any specific claim for the proceeds of the linens, &c. ; and they referred him to their counsel, &c. ; and that they instructed their counsel to offer to pay one third, &c.

*Henry*, in reply, said, that as there was no replication filed, the whole answer must be taken to be true ; and there was an express reservation of the plaintiffs' right to avail themselves of the statute, accompanying the offer of compromise. The plea of *non accrevit actio*, &c. at common law, contains as much an admission of the debt, as the answer of the appellants. Where a parol agreement is relied on, when the statute of frauds requires it to be in writing, if the defendant admits the parol agreement, in ever so broad terms, but says, at the same time, that he intends to protect himself against it, under the statute, the Court will allow him to do so. Now, in the present case, the answer of the appellants contains a most explicit denial of any offer or admission ; and avers, that if any such offer or admission was made, it was with the express declaration accompanying it, that they would rely on the statute of limitations for their defence. The Court, then, ought to modify their decree, so that the appellants may not be prejudiced by a decision here on that ground.

*Nov. 15th.*    SPENCER, Ch. J.   The motion is to send back this cause to the Court of Chancery, with directions, to allow the appellants to amend their answer, so as to do away the effect of their counsel's admission of the debt. It is a novel application to a Court of Appeals. In the case of *Filkins* v. *Hill*, (4 *Bro. P. C. 2 ed.* 640.) in the House of Lords, certain issues were directed by the Court of Chancery to be tried at law, and which did not embrace the merits of the controversy, or the matters intended to be put at issue ; and the House of Lords reversed that part of the decree, with liberty to the respondents to amend their bill, so as to put at issue the matters intended to be tried by the issues ; and the appellants were, also, allowed to put in a new answer to such amended bill. This direction of the Court of Appeals was proper, under the circumstances of that case. Here,

there is no allegation of any defect as to the matters at issue between the parties. The case of *Beekman* v. *Frost* is against rather than in favour of this application. What is there said about amendment, relates to the well known practice of allowing the party to amend, where a demurrer is overruled, and is to be restricted to the cases cited. What relief the Court below might have given the appellants, he would not say; but, in this Court, after argument, in which the point had been explicitly stated, and no objection then made, and after a decree had been pronounced, the case was widely different. But would this Court, if it had the power, send back the case, in order that the appellants might amend their answer? Independent of all that relates to the negotiation between the counsel of the parties, alleged to have been confidential, the answer contains a sufficient admission of the debt to take it out of the operation of the statute. An amendment, therefore, of the answer, would avail nothing. If the Court had the power, he should not be for exercising it, in order to let in the statute of limitations, in this case, where the party has made such a clear admission of the debt as is contained in the answer; nor did he regard what passed between the counsel, as coming within the privilege extended to proposals made merely for the sake of peace. He was of opinion, the motion ought to be denied.

PLATT, J. was absent.

WOODWORTH, J. said, that the application was certainly novel; but he was satisfied that this Court had the power to grant it, if a fit case was presented. That it was to let in the plea of the statute of limitations, ought not to excite prejudice against the party; as that might be a very meritorious defence. The rule at common law, to refuse to set aside a default, to let in the plea of the statute, has been exploded. If the Court below, on the ground which has been taken, would have allowed the amendment, of which he had no doubt, the appellants ought not to be without remedy here. It is the genius of a Court of equity to afford facility to arrive at the true merits and justice of the case. The Chancellor decided the cause solely on the ground of the

IN ERROR.
........
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

IN ERROR.
·······
ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

appellants being trustees. The principle laid down in *Beekman* v. *Frost*, (18 *Johns. Rep.* 544. 559.) appears to warrant this application. It is there said, that " if counsel shall, for the first time, raise a point here, which might have been obviated had it been raised in the Court below, he ought not to be permitted to do so ;" and he took the rule to be equally applicable to an affirmance, as to a reversal of a decree. Had the question been raised at the opening of the argument, this Court would not have permitted the fourth point of the respondents to have been argued. It is true, that it was one of the points printed with the case, though he did not recollect that it was, at all, relied upon by the counsel for the respondents. If it was relied upon, and urged by them, and the appellants' counsel waived their objection, they must be concluded by their · silence. But, he thought they had not waived their objection ; and, was of opinion, their present motion ought to be granted. He did not see in the answer any admission by the appellants of the debt, independent of what was said in the negotiation between the counsel of the parties.

S. M. HOPKINS, Senator, said, that every plea of the statute of limitations virtually admitted, that the debt had never been paid. It was an admission of the debt on the record ; as, by not traversing the declaration, which alleged the existing debt, but tendering an issue on a distinct matter, the whole of the allegations in the declaration were admitted. Every plea, therefore, of the statute of limitations might, with equal propriety, be said to contain an admission of the debt, and to conclude the party from availing himself of the statute. Courts are not to suppose it their duty to get rid of the statute of limitations ; it is often, as was observed by Lord *Mansfield*, a just and conscientious plea. We are not to inquire into the motives of persons who plead the statute ; but are to presume that they are just and fair. The language of the answer, that to avoid litigation the appellants proposed a compromise, showed that it was an offer of peace. It is impossible for a party to propose a compromise without an implied admission of the debt. All negotiations for amicable settlement between parties would

be cut off, unless protected by Courts, so as to prevent the proposal from prejudicing the rights of the party making it. But, according to the decision of a majority of the Court, as expressed the other day, that the answer contains a sufficient acknowledgment of the debt to take the case out of the operation of the statute, if the appellants were allowed to amend their answer, it could not do away that admission, which must stand by itself. Enough appears, however, to infer that there has been a misunderstanding between the counsel in the cause, as to this point; and he was, therefore, in favour of granting the motion.

IN ERROR.

°°•••°°

ALBANY, Nov. 1822.

MURRAY v. COSTER.

LIVINGSTON, Senator, said, this Court, no doubt, would be confined to what took place in the cause in the Court below; but how are we to know what points were argued in the Court of Chancery, except from the record, and we are to consider them, and such points as grow out of the pleadings and facts appearing on the record. The counsel for the appellants should not have suffered the proceedings to have been brought here, in the manner they have done, if they intended that any point arising out of those proceedings should not be relied upon or argued. He concurred in the opinion of the Chief Justice, that the motion ought to be denied.

SHEPHERD, Senator, said, he thought the motion ought to be granted.

VIELIE, Senator, said, that it was a novel application, to move the Court to reverse its own decree. The Court of Chancery ordered and decreed the plea and answer to be overruled; and that the defendants there put in a full and perfect answer to the bill, &c. A majority of this Court has affirmed that decree. The appellants, therefore, will now gain all they ask for by this motion. They may incorporate in the answer which they are to put in, what they now ask for, if it can avail them; or, by an amendment, of the plea, if the plea is directed to stand for an answer, obtain every purpose of the present motion. He was, for this reason, against granting the motion; otherwise, he should

IN ERROR.
........

ALBANY,
Nov. 1822.

MURRAY
v.
COSTER.

*For the mo-
tion 6.   A-
gainst it 18.

*Nov. 15th.*

have been in favour of a rehearing, if practicable, on the ground that the point on which the majority of the Court rested their decision had not been argued here, nor in the Court below.

The question being taken on the motion, a majority of the Court* were against it.

*Per Curiam.* Motion denied.

NOTE. *Mr. Griffin,* for the respondents, then offered a draught of a decree, stating the judgment of affirmance, as already mentioned ; but adding thereto, that the above motion was made and overruled, and, also, that the reason for the affirmance was, that the answer contained a sufficient acknowledgment of the debt, independent of the negotiation between the counsel.   But the Court did not adopt the decree offered, though no formal vote was taken upon it ; and they directed that the usual order and decree be entered, according to the judgment given on the 12th instant ; and that the motion just decided was a subsequent and distinct proceeding, of which a distinct entry was to be made in the minutes of the Court ; and thereupon the following order was entered : " This Court, having heard the arguments of the counsel of the respective parties, on the motion made by the appellants, founded on the affidavits in this cause, filed in this Court, that the plea of the appellants be allowed to stand for an answer, with liberty to the respondents to except to the same, and with leave to the appellants to amend their answer in the Court below, or to file a supplemental answer, do ORDER, ADJUDGE, and DECREE, that the said motion be overruled, and denied, with costs, to be taxed."