## Case No. 13,259.

### SPRING et al. v. GRAY et al.

[5 Mason, 305.] [1]

Circuit Court. D. Maine.    Oct. Term, 1830. [2]

AFFREIGHTMENT — PROFITS — "MERCHANTS' ACCOUNTS" — LIMITATION OF ACTIONS.

1. A special contract between ship-owners and a shipper of goods, to receive half profits in lieu of freight on the shipment for a foreign voyage, is not a case of merchants' accounts, within the exception of the statute of limitations.

[Cited in Blair v. Drew, 6 N. H. 242.]

[2. Cited in Arnett v. Zinn. 20 Neb. 594, 31 N. W. 241; Hurley v. Cox, 9 Neb. 233, 2 N. W. 707; and Smith v. Smith's Estate, 91 Mich. 11, 51 N. W. 695.—to the point that the object of statutes of limitations is to suppress fraudulent and stale claims from springing up at great distances of time, and surprising the parties. when all the proper vouchers and evidence are lost, or the facts have become obscure from the lapse of time or other causes.]

This was an action of assumpsit [by Seth Spring and others against William R. Gray and others, executors of William Gray]. The declaration contained two counts: (1) Indebitatus assumpsit, for balance of the account annexed to the declaration. (2) Money had and received. The pleas were: (1) Non-assumpsit, and issue thereon. (2) Non assumpsit infra sex annos. (3) Actio non accrevit infra sex annos. (4) Non assumpsit infra sex annos et triginta dies. (5) Actio non accrevit in sex annos et triginta dies. Replication to the 2d, 3d, 4th and 5th pleas, that the accounts and promises in the declaration mentioned are and arose from such accounts as concern the trade of merchandise between merchant and merchant, their factors, and servants, &c. Rejoinder to the same pleas, that the accounts and promises in the declaration mentioned, are not. nor did they arise from such accounts as concern the trade of merchandise between merchant and merchant, as the plaintiffs in their replication have alleged, and of this the defendants put themselves upon the country. The plaintiffs joined the issue.

At the trial. the whole evidence was applied to the account annexed to the declaration. The first item of the account was for a loss upon a policy of insurance, underwritten by the testator, for the plaintiffs. The court having intimated, that such an item was not properly matter of account, it was abandoned by the counsel for the plaintiffs. The other items wholly respected the special contract hereinafter stated. and consisted of charges on the debit side of the account. and allowances on

[1] [Reported by William P. Mason, Esq.]
[2] [Affirmed in 6 Pet. (31 U. S.) 151.]

the credit side of the account, as will appear in the transcript below.[3]

The special contract arose as follows: In the year 1810, the firm of Seth Spring & Sons, consisting of the plaintiffs, and of Andrew M. Spring, since deceased, were owners of the barque Morning Star, of which Andrew M. Spring was then master. In May of that year, they entered into a contract with the testator for the shipment of certain goods belonging to the testator in the Morning Star; and in pursuance of that contract the following papers were executed by the parties:

"Shipped in good order, and well conditioned, by William Gray of Boston, a native citizen of the United States of America, for his sole account and risk, in and upon the barque called the Morning Star, whereof is master, for this present voyage, Andrew M. Spring, now in the harbour of Boston, and bound for Algiers. To say. (The goods were here enumerated.) Being marked and numbered as in the margin, and are to be delivered in like good order and well conditioned, at the aforesaid port of Algiers, (the danger of the seas only excepted,) unto Andrew M. Spring, or to his assigns, he or they paying freight for the said goods, as per agreement endorsed hereon, without primage and average. In witness whereof, the master of the said barque, hath affirmed to four bills of lading, of this tenor and date; one of which being accomplished, the other three to stand void. Andrew M. Spring. Dated in Boston, May 26th, 1810."

Indorsed on this bill of lading, was the following memorandum:

"The proceeds of the within cargo, amounting to thirty-five thousand two hundred and two dollars eighty-three cents, as per invoice, cost, and charges, is to be invested in Algiers, or some other port, (after deducting all charges, consignee's commission included, except freight, and premium of insurance; neither of which two last mentioned charges are to be made on the goods,) and returned in the said barque Morning Star, to Boston, where Seth Spring & Sons (owners of said barque) are to receive one half the net profits thereon, in lieu of freight and primage, the voyage round. The consignee's commission to be two and a half per cent on the sales of the within cargo. And no commission to be charged in Boston, except what is paid an auctioneer. (Signed) Seth Spring & Sons. William Gray.

"Dollars, 35,202$^{83}/_{100}$."

(Copy of instructions on a separate paper.)

"Boston, May 26th, 1810. Capt. Andrew M. Spring: The cargo which I have shipped on board the barque Morning Star, under your command, you will proceed with to Algiers, and a market; there sell the same for the most it will fetch, and, after deducting the charges, (except freight and primage,) and two and a half per cent for your commissions, invest the net proceeds in brandy, wines, silks, and such other goods as are suitable for this market, if to be obtained: ship the whole on board the barque, and return back to Boston directly. Upon your arrival here, the whole cargo is to be sold; out of which I am to receive the first cost of the cargo now on board, agreeable to invoice; and one half the profits for risque and interest money. The other half of the profits the owners of said barque are to have, for freight and primage on the cargoes out and home. There is to be no division of the cargo or profits, until the vessel returns, or the transaction is closed. Upon your arrival in Algiers apply to our consul, Tobias Lear, Esq. and take his advice; if he recommends it, sell the cargo, and invest the proceeds as above mentioned; otherwise, proceed to some other market, as Mr. Lear shall advise; and, as soon as you have completed the business, proceed direct for this port. In case any unforeseen accident should take place, which, upon fair calculation will, or may, prove, that it will be for our mutual interest for you to alter the voyage, you have liberty to do it. Annexed, you have a list of my correspondents, through whom you may forward your letters to me. Committing you to Almighty Protection, and wishing you a

---

[3] The account is as follows:

William Gray, Esq. of Boston, Merchant, in account with Seth Spring & Sons.

**Dr.**

| | |
|---|---:|
| 1810. Sept. For loss sustained on the sloop Francis, Capt. Ebenezer Jordon, master, which said Gray insured | $ 2,500 00 |
| 1811. Oct. For 35,000 gallons olive oil in casks, delivered from barque Morning Star, William Nason, master, in Boston, at $1.25 per gallon | 43,750 00 |
| For 127 cases do. delivered by same | 1,270 00 |
| For 53,803 lbs. cotton, left with Mr. Lear, in Algiers, and afterwards paid for by the Dey of Algiers, to Commodore Stephen Decatur, and received by said Gray, at 30 cts. per lb. | 16,140 90 |
| For cash paid by Andrew M. Spring, to Bainbridge & Brown, merchants, England, and by them placed to the credit of Mr. Gray | 2,000 00 |
| For cash paid Andrew M. Spring's commissions, 2 1-2 per ct. on said barque's outward cargo, as per agreement | 880 00 |
| 1829. Interest on loss on Fanny, 19 years | 2,850 00 |
| Interest on one half the profits of Morning Star's voyage, as per agreement | 14,758 41 |
| | $84,149 31 |

**Cr.**

| | |
|---|---:|
| 1811. For amount of the outward cargo of the barque Morning Star, as per original invoice and bills of lading | $35,202 83 |
| For his half the profits of said Morning Star's voyage | 14,469 03 |
| 1829. For balance now due from estate of said William Gray | 34,477 45 |
| | $84,149 31 |

prosperous voyage, I am your friend, (Signed) William Gray."

"Received the original of the preceding instructions, which I promise strictly to observe and follow. (Signed) Andrew M. Spring."

The vessel sailed on the voyage, and arrived at Algiers. Part of the cargo was there sold, and the proceeds partly remitted to London, on account of Gray, and partly invested in oil on the return voyage, and delivered to Gray. The other part of the cargo was seized by the Dey of Algiers, and restitution of the amount of the value thereof was not received by Gray until 1817. The account was founded upon the transactions, as the plaintiffs considered them to be, at the final close of the adventure, and the receipts of all the proceeds by Gray. The particulars are not deemed important, farther than as they appear in the account annexed.

Upon the opening of the case by Shepley, for the plaintiffs, it was objected by Nichols and Webster, for the defendants, that the plaintiffs had not sustained their replication, and that the special contract and breach, so put in evidence, were not matters of account between merchant and merchant, within the purview of the statute.

In support of the objection, Nichols and Webster argued as follows:

To all the demands of the plaintiffs in this suit, we have pleaded, first, the general issue; and secondly, the statute of limitations. To this second plea, the plaintiffs have replied, merchants' account, and upon this replication we are also at issue. For the purpose of avoiding the labour of ascertaining, whether the defendants are at all indebted, or if indebted, to what extent, we move the court, upon the second issue, to direct the jury, that upon the plaintiffs' own showing, their cause of action is not excepted by the clause of the statute in respect to merchants' accounts.

It is admitted by the plaintiffs, that their claim is wholly founded on a contract of affreightment, endorsed on the bill of lading, which has been read. The question then is, whether this claim arises from "such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants." It is agreed, that there is no item of the plaintiffs' account within six years. And it is a grave question, whether there should not be some item within that time, even in the case of merchants' accounts, in order that they should be saved out of the general operation of the statute. The affirmative of this question is held in England, as appears by the case of Barber v. Barber, 18 Ves. 286; and also in New York, in Coster v. Murray, 5 Johns. Ch. 522. It was decided otherwise, in the case of Mandeville v. Wilson, 5 Cranch [9 U. S.] 15. But the point does not appear to have been at all discussed in that case; and we suppose that the supreme court of the United States would be still willing to consider it as an open question. We are aware, that in the supreme courts of Massachusetts and Maine the law is held in conformity with the decision in Mandeville v. Wilson. Bass v. Bass, 6 Pick. 362; Davis v. Smith, 4 Greenl. 292. But in the case in 4 Greenl. it was not the point before the court; and in that in 6 Pick., the court admits, that there is a great diversity of judicial opinion on the subject.

We do not, however, propose to discuss the point here; as we suppose, that this court will feel bound by the opinion expressed by the supreme court of the United States, till it shall be reversed in the same court. Taking it then for granted, that it is not necessary, that any item of the plaintiffs' demands should be within six years; if in other respects they are within the exception of the statute, the question is, whether this exception is at all applicable to such demands.

In order to arrive at the true meaning of this clause of the statute, we should consider, what were the probable reasons, which influenced the legislature in enacting it. It is well known, that merchants, having mutual dealings, frequently suffer their accounts to remain open for a great length of time; each anticipating further advances, by which the balance, from time to time, will be changed. It would be perfectly reasonable, that such accounts should not be considered within the general operation of the statute, upon the principle of there being a trust and confidence between the parties, that while the accounts remain open and unliquidated, no inference is to be drawn from the mere lapse of time, against the justice of the demands of either party. It would seem, therefore, that the accounts referred to in the statute were open and current accounts between merchants, having dealings together as such; and that there should be a chain of dealings, and not a single transaction, which, from the nature of the case, was to be settled without passing into an account. There must be a mutual and reciprocal credit given, a real mutuality and reciprocity existing in fact, and not merely in form. The actual case is to be regarded, under whatever form it be presented. If there have been mutual advances of goods or money, these may form the basis of merchants' accounts, and be within the exception of the statute, however informally the accounts may have been kept. If, on the other hand, there is no reciprocity in fact, no ingenuity of a party in throwing his demand into the form of an account, will enable him to evade the operation of the statute. For every transaction may be stated in the form of an account of debtor and creditor, and this principle is the basis of the whole system of book-keeping by double entry. The claim of the plaintiffs must be directly founded upon, and necessarily arise from, accounts. It must be a case, where, according to the old decisions, an action of ac-

count must be brought, or, according to the later decisions, an action of assumpsit, founded upon accounts.

In the next place we contend, that the exception in the statute applies only to "such accounts as concern the trade of merchandise." It must be a direct concern of trade; as, where one person entrusts another with his property to merchandise with. and to account for the proceeds; in which case, the person entrusted is bound, without any limitation of time, to render an account of the property. But whoever renders services to another, in respect to his property, in any other manner than in the way of trade or traffic, whether it be under a special contract or otherwise, he must bring his action for those services within the period prescribed by the statute, or his demand will be barred. If it be merely a contract by the owner of goods, to pay another for certain services in respect to the goods, whether for transporting them, insuring them, or laying out work and labour upon them in any way; this is not the sort of trade which is contemplated by the statute. These principles are supported by authority. Webber v. Tivill, 2 Saund. 124. Declaration for goods sold, and insimul computassent; held, that though the dealing between the parties concerned merchandise, and was between merchants, yet that was no reason, why it should be excepted out of the statute; for if it should, by the same reason every contract between merchants would also be excepted, which was not the intention of the statute. Accounts between merchants only are excepted, and not contracts likewise. Cotes v. Harris, Esp. N. P. 14, Bull. N. P. 149. The exception in respect to merchants' accounts applies only to cases of mutual accounts. This case is confirmed by that of Cranch v. Kirkman, Peake, 121. The following cases also support the doctrine, that the action must be founded upon accounts relating to the trade of merchandise, and that the accounts must be mutual; Ramchander v. Hammond, 2 Johns. 200; Coster v. Murray, 5 Johns. Ch. 522; Murray v. Coster, 20 Johns. 576; Ingram v. Sherard, 17 Serg. & R. 347; Foster v. Hodgson, 19 Ves. 180.

Let us try the present case by the foregoing rules. In the defendants' books, there is no account whatever between the parties. But the plaintiffs say, that in these books, an account is opened with the "adventure in the barque Morning Star;" in which the adventure is charged with all sums expended on account of it, and credited with the proceeds of the goods belonging to it; that the plaintiffs being entitled to half the profits of this adventure, they are interested in it as copartners, and that it is the same thing as if the account was with them directly; that in order to ascertain how much, if any thing, is due to the plaintiffs, it is necessary to go into a minute account of the voyage; and that, therefore, their claim is founded upon accounts between merchants relating to the trade of merchan-

dise. It is true, that Mr. Gray had in his books an account with this adventure. But he had a similar account with every other adventure belonging to him. This adventure was, at all times, Mr. Gray's sole property; and the mere circumstance, that he was to allow the plaintiffs half the profits in lieu of freight, did not give them an interest in the adventure as copartners, or afford any proof, that there were mutual accounts between the parties. As the account is stated in defendants' books, it is neither in form, nor substance, a mutual account between Gray and Spring; but an account between a part of Mr. Gray's sole property, and sundry other persons or accounts. It is merely a convenient mode of ascertaining a result; and this form is adopted, because no transaction can be recorded in a merchant's books, kept in the Italian mode, in any other form than that of an account. If a merchant buys a bale of goods for himself, which he pays for in cash, this transaction is stated in his ledger in the form of an account of debtor and creditor. So if he loses his goods by fire or otherwise, he states the loss in his books in the form of an account. But such transactions can, in no degree, be understood as relative to the subject of accounts between merchant and merchant, so as to take the claim of any third person against him, on account of those goods, out of the statute of limitations. If this mode of stating an account would bring the plaintiffs' demand within the exception of the statute, then the same transaction would be a merchant's account or otherwise, not according to the real state of facts, but according to the peculiar skill of the accountant.

But the plaintiffs say, that in their books there is a current account between the parties, in which Mr. Gray is credited with the cost of the goods shipped, and with half the profits of the voyage, and charged with the proceeds of the goods, by which a large balance is deduced in their favour. This, we say, is an incorrect mode of stating the account, inasmuch as it is admitted, that the whole claim rests on the contract of affreightment; so that the relation of debtor and creditor is confounded with that of bailor and bailee, and the party is charged and credited with his own goods. There is no mutuality of accounts in this case. Supposing, what we allege to be the fact, that instead of a profit, there had been a loss on the voyage; then, upon the principle of mutuality, the plaintiffs would be liable for their proportion of this loss. But to this, they would of course object, as being no part of their contract.

In the next place, we think it very clear, that the claim of the plaintiffs is not founded upon any accounts relating to the trade of merchandise. It is founded on a simple, and not uncommon contract of carriage, and on a single transaction. The demand is merely for freight. It was no part of the contract that the plaintiffs should trade with the goods, but simply carry them as bailees. This is no more

a case of merchants' accounts relating to the trade of merchandise, than if it were a demand for an average loss by fire or other accident, under a policy of insurance. In that case, it might be necessary to go into a statement of accounts to ascertain the amount of the average. But that would not constitute such an account as is contemplated by the statute. It is true, if the loss were adjusted, and the assured should charge the assurer by consent, with the liquidated amount in account current, this might form an item of merchants' accounts, if connected with other dealings in the way of trade, like an old balance carried forward into a new running account. But till the loss is adjusted, the claim is wholly under the specific contract in writing; and so here, the claim is wholly under the contract on the back of the bill of lading, and not upon any accounts in relation to the trade of merchandise. If the sum due upon this contract could be made the subject of merchants' accounts, the same might be done with a note of hand, or any other mercantile contract. It is well known, that merchants are in the habit of stating accounts in their ledgers with notes receivable. But it never occurred to any one, that such entries constituted accounts between merchant and merchant relating to the trade of merchandise, so as to save those notes from the operation of the statute.

The plaintiffs further contend, that they stand not only in the relation of carriers, but of consignees, or factors; for the goods are consigned to Andrew M. Spring, one of the parties, for sale, and the proceeds of the sale are to be re-invested and brought home to Mr. Gray, in the Morning Star; that consequently, the plaintiffs are accountable for the sale of the goods, as well as their transportation. This we deny; for though Andrew M. Spring is consignee, it is by a totally separate contract from that of the plaintiffs as carriers, and a distinct compensation is to be paid to him in his separate capacity. The plaintiffs are, therefore, in no way answerable for his fidelity in this respect.

On the whole, we submit to the court with great confidence, that both upon principle and authority, the claim of the plaintiffs is barred by the statute of limitations, and that there is no pretence for considering it within the exception as to merchants' accounts.

Mr. Shepley, for the plaintiffs, argued in reply:

The clause in the Maine statute, relied upon by the plaintiffs, is in these words: "All actions of account and upon the case, other than such accounts as concern the trade of merchandise between merchant and merchant, their factors, or servants." These words are an exact transcript from the statute of 21 Jac. I. c. 16. "Such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants," are excepted out of the statute; and the rights of the parties remain the same, as if the statute had not been enacted. At least, this would seem to be the decision of a mind, unbiassed by construction or authority. There is nothing in the language of the statute, that restrains the exception to accounts, that are not stated; or to mutual accounts. They must be "accounts"; but it is quite certain, there may be accounts, which are confined to one of two parties interested in them; and it is equally clear, that these accounts may "concern the trade of merchandise." Does the phrase, "between merchant and merchant," imply, that the accounts must be entered on the books of each, or that there must be debts and credits on each side? May there not be dealings between merchant and merchant, and yet all the items of the dealings be on one side, in the account, or entry of them on books? It is not admitted, that the exception, when freed from the pressure of constructive cases, requires, that there should be even more than one claim or item of account; or that there should be any item within six years before action brought; or that the accounts, or claims, or dealings, should be placed in books of so many lines of writing. It is sufficient, that there is an account, or item of account. The plural, "accounts," was not used to designate a plurality of claims in each case; but because in designating the dealings, or claims, or accounts, between merchant and merchant, the plural is necessarily used to determine the character of the claim to be excepted. The account or claim must be between merchant and merchant, and must "concern" the trade of merchandise. It is not necessary, that it should be for a sale or purchase of merchandise. It is enough, that it arises out of, or "concerns," the trade of merchandise. It may be any claim, which naturally and usually results from the trade of merchandise, because it will then "concern" it. Where is the foundation in the language of the statute for all the decisions declaring, that the accounts must not be stated accounts; and that they must be mutual accounts; and that some item must be within six years; but in the ingenuity of counsel, and of the courts, in undertaking to determine what the statute should be, reasoning from the mischiefs, which they supposed the enacting power intended to remedy, instead of examining and deciding what the statute really was? This mode of construing the statute of limitations in all its parts unfortunately commenced early; and continued to be acted upon until the statute was nearly repealed. The supreme court of the United States has been forward in restoring it; and the same mode of reasoning and of deciding, which nearly destroyed the whole statute, has greatly limited and impaired the exception relating to merchants' accounts; and the same course of reasoning and deciding, which restores the statute to its original meaning and vigour, will also restore the exception. And the exception should be as fully restored and

relieved from the weight of authority, as the general provisions of the statute. Although it is believed, that such would be the legitimate construction of the statute, the plaintiffs' claim may be brought within the exception, as understood in the constructive cases. These cases are:

(1) A class of cases deciding, that stated accounts are not within the exception. Webber v. Tivill, 2 Saund. 122; Scudemore v. White, 1 Vern. 456; Chievly v. Bond, 4 Mod. 105; Welford v. Liddel, 2 Ves. Sr. 400; Farrington v. Lee, 2 Mod. 311.

(2) Another class decides, that the exception extends only to "mutual accounts" and "reciprocal demands." Cotes v. Harris, Bull. N. P. 149; Cranch v. Kirkman, Peake, 121; Catling v. Skoulding, 6 Term R. 189; and Ingram v. Sherard and Coster v. Murray, cited by opposite counsel.

(3) The cases of Catling v. Skoulding and Cranch v. Kirkman decide also, that the exception extended to other persons' accounts, than merchants, although the words of the statute are expressly so limited; and although it had been before held to extend to none but merchants, in cases, Sherman v. Withers, Ch. Cas. 152; Farrington v. Lee, 1 Mod. 270.

Having proceeded so far as to extend the exception to other accounts than those of merchants, it became necessary to place restrictions and limitations upon the exception; or the whole statute would, in effect, be repealed. There is, therefore, found—

(4) Another class of cases having a tendency, more or less direct, to show, that there must be some item of account within six years before action brought, to bring them within the exception. Welford v. Liddel, [supra]; Jones v. Pengree, 6 Ves. 580; Duff v. East India Co., 15 Ves. 199; Barber v. Barber, 18 Ves. 286; Foster v. Hodgson, 19 Ves. 180; Union Bank v. Knapp, 3 Pick. 112.

It will be difficult for any well balanced mind to examine the statute in the absence of all previous construction and authority, and find any ground whatever, for making a distinction between accounts partly more, and partly less, than six years standing; and all other accounts between merchant and merchant concerning the trade of merchandise. Such a construction introduces a limitation into the exception, almost as destructive of its original design, and as subversive of its language, as a class of repudiated cases has for a long time been, of the statute itself. The supreme court, in Mandeville v. Wilson, 5 Cranch [9 U. S.] 18, withstood this annihilation of the exception. And it has been followed by the supreme court of Maine, in Davis v. Smith, 4 Greenl. 292; and by the supreme court of Massachusetts, in Bass v. Bass, 6 Pick. 362. It is hoped, that the courts, in restoring the statute, and relieving it from a load of constructive cases, will also restore the exception, and afford it a like relief. And, as the United States courts may be regarded as returning first from cases to common sense, in construing the statute, it may be hoped they will do the same for the exception now under examination.

The evidence introduced exhibits an account on the plaintiffs' books, crediting the deceased with the outward cargo, and charging the return cargo, with some other items. Mr. Gray's books do not charge the plaintiffs; but the charges are made, and credits given, under the name of adventure by the barque Morning Star. There is no item within six years. There is a special agreement as the basis of these accounts, out of which they arise. The evidence shows, that both parties were merchants; and if these are such accounts, as the statute contemplates, they are undoubtedly accounts between merchant and merchant, their factors, or servants. It is the subject matter, and not the form, of the accounts or claims, upon which the statute acts. If the subject matter is of a character to be aptly described under the term "accounts," it is sufficient to answer that part of the description. Now the subject in litigation here is the transportation of a cargo from this country to a foreign country; a disposition or sale of such cargo there; the investment of the proceeds in a return cargo; the re-shipment and return of that cargo; and a sale of it here, to ascertain the profits of the whole adventure. From such transactions, there must arise accounts; and such accounts as would seem to be within the exception of the statute; and such accounts as must be within the reasoning and policy, which occasioned the introduction of the exception. For it is obvious, from the disasters to which such adventures are subjected, that many years might elapse, before the final acount of profit or loss could be made up. The evidence now introduced shows, that the accounts in this case could not have been settled for more than eight years after the contract; and the same causes might have postponed a settlement many years more. If these are accounts between merchant and merchant, are they not such accounts as "concern the trade of merchandise"?

The argument of the defendants is, that the accounts do not concern the trade of merchandise, but only the carriage or freight of merchandise. This is not admitted to be the proper construction of the contract. But suppose it were so, that the only obligation imposed upon the plaintiffs, was the carriage of the merchandise. Still, the contract contemplates the sale of the cargo; the re-investment of it, and the sale of the return cargo by some person, to accomplish the transaction. And until all this takes place, the accounts could not be made up; and the result could be obtained only by an examination of all the accounts arising from all these various transactions. The plaintiffs, therefore, had an interest in these accounts, by whomsoever they might be kept. They must have a right of examination into them. And if they were not to exercise any

agency in the sales, the accounts of such sales must be accounts between the parties; and they would be accounts "concerning the trade of merchandise." And the words of the statute would include such accounts. They would still be accounts between merchant and merchant, and in which both would be interested to establish their rights, and would be accounts "concerning the trade of merchandise." If, therefore, the true construction of the contract does exclude the plaintiffs from all responsibility respecting the sale of the property, it does by no means follow, that the accounts, which arise out of the sale, as well as transportation of the cargo, and expenses upon it, may not be accounts "concerning the trade of merchandise."

Accounts between merchant and merchant, their factors or servants, may obviously be such as concern the trade of merchandise, and not arise out of sales or purchases. One merchant may employ another at a foreign port to receive goods, pay freights on them, enter and pay duties on them, reship them to another port, pay wharfage, storage, insurance, &c.; and his compensation for his services may be agreed to be, on the profits of the adventures. Can there be a doubt, that such accounts would be within the words of the statute, and within the spirit of it? And would they not be liable to great delay in their settlement, and be within the class of claims, for the protection of which the exception must be supposed to have been introduced? Merchants' accounts, as well as those of their factors, or servants, must, in the common transactions of business, be made up of many items and claims, which do not arise from the sale or purchase of merchandise; and is the construction of the statute to be such, as would include in the exception a part of their accounts, and leave out other parts? Such a construction would ill accord with the liberal construction given to laws in relation to mercantile subjects. The contract is regarded as a mere contract of affreightment, by the defendants; and Andrew M. Spring as consignee, and responsible to Mr. Gray, as such, under a different contract from that of Seth Spring & Sons. The plaintiffs regard the whole as one contract, both on the back and in the bill of lading, and consider the whole together, as carrying into effect the agreement between the parties. They consider one of the inducements to make the contract on the back, to have been, the employment of one of their firm to make the sales and purchases abroad; together with the compensation to go to him as stipulated in the agreement, two and a half per cent commissions. "The proceeds of the cargo is to be invested in Algiers, or some other port," "and returned in the barque Morning Star, to Boston, where Seth Spring & Sons are to receive one half the net profits thereon, in lieu of freight and

primage, the voyage round." "The consignee's commission, to be two and a half per cent on the sales of the within cargo." The consignee is bound by the agreement on the back of the bill of lading, and must act in obedience to it; for he is a party to it, as one of the firm of Seth Spring & Sons.

Acting under that agreement, and bound by it, signed by all the parties, he is an agent of all, and not of Gray only. The proper effect of all the papers being, to make him the common agent of all interested in the sale, and investment of the cargo. "The proceeds are to be invested" by whom? By him, who is appointed assignee by consent of all; by him, who is himself interested as a partner in one house, and who acts in the capacity of master of the vessel, and representative of that house, and consignee of the cargo. His accounts and proceedings are the accounts and proceedings of the parties themselves, who are interested in them. If the transaction does not constitute a partnership, as respects this particular adventure, which the plaintiffs think may be the truth in relation to it, still it does constitute a joint interest in the sales, investment abroad, and final sales, and in all accounts arising out of them. The accounts may be looked upon as accounts between a merchant and his factors or servants. The plaintiffs must have been as much interested in these accounts, as the servant of a mercantile house sent out to do its business in a foreign country, and having no interest in the property entrusted to him, other than the special property of a bailee; and such a servant's accounts seem to be within the exception in the statute. In whatever light the accounts may be viewed, there will be found the same reasons for considering them within the exception on account of the risk, delay, and impracticability of an early settlement, as apply to the open accounts of sales of merchandise between merchant and merchant.

STORY, Circuit Justice. The present case in the actual posture, in which it is presented to the court, resolves itself purely into a question of law; and has, accordingly, been so argued by the parties. And I shall at once proceed to declare the opinion, which I have formed on the point, and if the parties are dissatisfied with it, it is a great consolation to me, that the amount in controversy is sufficiently large to enable them to have it revised by the supreme court upon a bill of exceptions.

I own myself to be one of those, who consider the statute of limitations a highly beneficial statute, and entitled, as such, to receive, if not a liberal, at least a reasonable construction, in furtherance of its manifest object. It is a statute of repose; the object of which, is to suppress fraudulent and stale claims from springing up at great distances of time, and surprising the parties, or their

representatives, when all the proper vouchers and evidences are lost, or the facts have become obscure, from the lapse of time, or the defective memory, or death, or removal of witnesses. The defence therefore, which it puts forth, is an honorable defence, which does not seek to avoid the payment of just claims and demands, admitted now to be due; but which encounters in the only practicable manner such as are ancient and unacknowledged; and, whatever may have been their original validity, such as are now beyond the power of the party to meet, with all the proper vouchers and evidence to repel them. The natural presumption certainly is, that claims which have been long neglected, are unfounded, or at least, are no longer subsisting demands. And this presumption, the statute has erected into a positive bar. There is wisdom and policy in it, as it quickens the diligence of creditors, and guards innocent persons from being betrayed by their ignorance, or their over confidence in regard to transactions, which have become dim by age. Yet I well remember the time, when courts of law exercised what I cannot but deem a most unseemly anxiety to suppress the defence; and when, to the reproach of the law, almost every effort of ingenuity was exhausted to catch up loose and inadvertent phrases from the careless lips of the supposed debtor, to construe them into admissions of the debt. Happily, that period has passed away; and judges now confine themselves to the more appropriate duty of construing the statute, rather than devising means to evade its operation.

It appears to me also, that it is the duty of the court to adhere to the very terms of the statute, and not, upon imaginary equitable considerations, to escape from the positive declarations of the text. No exceptions ought to be made, unless they are found therein; and if there are any inconveniences or hardships growing out of such a construction, it is for the legislature, which is fully competent for that purpose, and not for the court, to apply the proper remedy. The statute of limitations of Maine (Laws 1821, c. 62) enacts that "all actions of account and upon the case, other than such accounts as concern the trade of merchandise between merchant and merchant, their factors, or servants, &c., shall be commenced and sued, &c. within six years next after the cause of such actions and suits, and not after." The statute is pleaded in bar of the present suit, and the replication is, that it is a case of "merchants' accounts" within the exception, upon which the parties are at issue. And the question is, whether the facts prevent a case within the exception of merchants' accounts in the statute. The Maine statute is a mere transcript on this head of that of 21 Jac. I. c. 16. Upon that statute, an early doubt arose whether any other actions than actions of account were within the exception. The earliest decisions confined the exception to mere actions of account, which were at that time the common remedy for unsettled accounts. So it was held in Farrington v. Lee, 1 Mod. 269, 2 Mod. 312, and for a considerable time afterwards. Chevely v. Bond, Carth. 226, 4 Mod. 105; 1 Show. 341; Martin v. Delboe, 1 Mod. 71. But the doctrine is now well established, that it applies to actions of assumpsit, as well as of account. See 2 Saund. 125, etc., and notes 6 and 7 of Serg. Williams; Peake, 164; Mandeville v. Wilson, 5 Cranch [9 U. S.] 15. The exception was undoubtedly made for the benefit of merchants, and probably had principally in view cases of foreign trade, carried on through the instrumentality of factors and agents; for there was at that time very little inland commerce in the kingdom of England. In the course of such transactions, accounts would naturally arise, which, from the distance of the parties, might remain unsettled for many years. In Webber v. Tivill, 2 Saund. 125, Jones, who argued for the defendant, and whose argument was adopted by the court, said,—"The reason was, because it often happens that merchants, who are as partners, or hold correspondence one with the other in several parts of the world, may have accounts current between them for several years before they have an opportunity of meeting to state their accounts, and therefore the statute does not mean to limit their accounts." Every part of the exception is equally material; and it is not sufficient, that a plaintiff brings himself within one part of the description, if all parts are not applicable to him, in the predicament in which he stands before the court. He must by his replication aver, that it is a case of accounts; of accounts, which concern the trade of merchandise; of accounts between merchant and merchant, their factors, or servants.

In the first place, it must be a case of accounts. The saving, as has been justly remarked long ago, is not of actions, but of accounts. Webber v. Tivill, 2 Saund. 125; 1 Mod. 269, 270. The statute did not mean to except actions generally, between merchants, &c., but only such actions as respected accounts. This is the natural interpretation of the text, and it is confirmed by the preceding words; for the action of account, out of which the exception is carved, is founded solely on cases lying in account. The case, therefore, must be such as is properly matter of account, and not any special contract, which the party may afterwards throw into the shape of an account. The action of account at the common law lay only against bailiffs, receivers, guardians, and partners in trade, and other persons standing in the like relation, who received goods, merchandises, monies, &c., of the other party, to render an account thereof. But it was never supposed, that a special contract, which might alternately require an examination of accounts, or might be pressed into that shape, was within the reach of the exception. We must understand the statute in its obvious sense, as

saving accounts proper; that is, such as consist of debits and credits, properly arising in account, and not as saving all cases, where one man is accountable to another for his performance or non-performance of a special contract. That was so decided in Chevely v. Bond, Carth. 226, where a suit was brought on a bill of exchange, and there was a replication, to a plea of the statute, of merchants' accounts. But the court held, that bills of exchange for value received, are not such matters of accounts as are intended by the exception. The true object was to save such accounts only, for which an action of account would lie. It may be necessary in many cases, to make out an account, in order to decide a claim arising upon a contract; but that will not make it a matter of account. For instance, in ascertaining a partial loss, or average upon a policy of insurance, an account may be necessary; but no one supposes that would, as between the assured and the underwriter, constitute a case of "merchants' accounts" within the statute.

Then, under what circumstances does the exception apply to accounts? Does it apply to all matters properly and originally matters of account, without reference to the question, whether they have been stated, or closed, or are now open and current? The language of the statute is "accounts" generally, without any qualifying adjunct. But it has been held from the earliest times, that the exception does not apply to stated accounts. It was so decided in Webber v. Tivill, 2 Saund. 125, and that decision has never, on this point, been departed from. See Sandys v. Blodwell, W. Jones, 401; Martin v. Delbo, 1 Sid. 465, 1 Mod. 70; 1 Vent. 89; 1 Lev. 298; Farrington v. Lee, 2 Mod. 311, 312, 1 Mod. 268; Chievly v. Bond, 4 Mod. 105. The ground of that decision was, that as soon as an account is stated, and a balance agreed, it becomes a dead debt; and for this an action of debt will lie; and by parity of reason, an action of assumpsit also. It may also be illustrated by considering, that where an account has been stated between the parties, an action of account no longer lies (Com. Dig. "Accompt," E, 3; Godfrey v. Saunders, 3 Wils. 73, 94; Fitzh. Nat. Brev. 117, and note d), for the defendant may then plead quod plene computavit; and yet it is plain, that the exception was intended to be carved out of cases, for which an action of account lies, otherwise it would be nugatory.

Then again, does the exception apply to accounts closed, or only to accounts current? It may be admitted, as was decided in the case of Mandeville v. Wilson, 5 Cranch [9 U. S.] 15, that an account closed by a cessation of dealings between the parties is not an account stated. But that does not dispose of the question; for it is still open to consideration, whether any but current accounts are within the exception. Upon this point the authorities, both in England and America, are not uniform. The decision in

[Mandeville v. Wilson] 5 Cranch [9 U. S.] 15, is, that the exception applies as well to closed, as to current accounts. That has been followed by the supreme court of Massachusetts, in Bass v. Bass, 6 Pick. 362; and of Maine, in Davis v. Smith, 4 Greenl. 292. But in an earlier case, Union Bank v. Knapp, 3 Pick. 96, 112, the former court held a different opinion. See, also, Cogswell v. Dolliver, 2 Mass. 217, and 5 Dane, Abr. p. 395, c. 161, art. 6, § 4.

In Sherman v. Sherman, 2 Vern. 276, Eq. Cas. Abr. 13, it was agreed, that though lapse of time might be a bar to a bill in equity for an account long after all dealings had ceased between the parties (see, also, Bridges v. Mitchell, Bunb. 217, Gilb. Eq. 224; Foster v. Hodgson, 19 Ves. 180); yet, that the statute of limitations was not pleadable, if it was a case of merchants' accounts. The same conclusion may be deduced from other early cases, though some of them probably turned upon other considerations. See Sandys v. Blodwell, W. Jones, 401; Martin v. Delboe, 1 Lev. 298, Sid. 465; 2 Keb. 674, 696, 717. Lord Hardwicke seems at one time to have inclined to the same opinion. See the case cited in 19 Ves. 185. But his deliberate judgment in Welford v. Liddel, 2 Ves. Sr. 400, was, that where all accounts have ceased for more than six years, the statute is a bar, and the exception applies only to accounts running within the six years; and then the whole account is saved as to antecedent items. He there said, that the object of the exception was to prevent dividing the accounts between merchants, when there were running accounts unsettled. This last opinion appears to have become, since that time, the prevalent opinion in England; and has been acted on by very eminent judges, not indeed without exception, for Lord Kenyon seems to have held a different doctrine (Catling v. Skoulding, 6 Term R. 193); but with such a weight of authority, as leaves little doubt, that it will be adhered to. I do not go over the cases. They are very ably collected by Mr. Chancellor Kent, in his judgment in Coster v. Murray, 5 Johns. Ch. 522. I have travelled over the same ground, and find nothing to add to, or subtract from, his observations. His own conclusion was, that the statute is a bar in all cases, where the merchants' accounts are closed, and not running within six years. If this case turned upon the point now under consideration, my official judgment would be controlled by the local decisions already adverted to, in Massachusetts and Maine; supported, as they are, by that of the supreme court of the United States. At the same time, I cannot but express a hope, that the question may be again re-examined, if it should ever be presented in any case from a state, where it is not yet fettered by any local authority. There is enough of doubt about it to justify an ample inquiry. See Astrey's Case, Freem. Ch. 55.

Then, again, does the exception apply to cases

of account, where the account is all on one side, or only to mutual accounts, or cases where there are mutual debits and credits? The doctrine of Jones, in Webber v. Tivill, 2 Saund. 125, was, that accounts between merchants only, (by which he meant mutual accounts,) and not contracts merely, were excepted; and his argument was adopted by the court. In Cotes v. Harris, Bull. N. P. 149, Mr. Justice Denison also held, that the exception extended only to mutual accounts and reciprocal demands. Mr. Chancellor Kent, in Coster v. Murray, 5 Johns. Ch. 522, adopted the same doctrine; and it was confirmed by the opinion of Mr. Chief Justice Spencer, in his well reasoned opinion in the same case upon the appeal, 20 Johns. 576, 582. The supreme court of Pennsylvania, have followed it in a very recent case. Ingram v. Sherard, 17 Serg. & R. 347. There are, perhaps, some decisions admitting of a different interpretation; but the present case does not require an absolute opinion upon this point. See Godfrey v. Saunders, 3 Wils. 94; Marston v. Cleypole, Bunb. 213; Martin v. Delboe, 1 Lev. 298; Sid. 465. The accounts must also be "such as concern the trade of merchandise," by the very terms of the statute. It is plain, therefore, that it does not cover all accounts. What are accounts, which concern the trade of merchandise? It seems to me, that they are such as concern traffic in merchandise, where there is a buying and selling of goods, and an account properly arising therefrom. Merchants may mutually buy and sell to each other, and mutual accounts may thus arise between them. Factors may buy and sell for the benefit of their principals; and thus may have debits and credits in account with them. Indeed, it is the common duty of factors and stewards to keep accounts, as well of what they receive, as of what they pay. That the exception applied only to the trade of merchandise was clearly the opinion of Lord Hardwicke, in Sturt v. Mellish, 2 Atk. 612, where the transaction was not a buying or selling of merchandise, but the mere receipt by the defendant of monies, which he was authorized to receive from a foreign government. In Bridges v. Mitchell, Bunb. 217, Gilb. Eq. 224, the court strongly inclined to think, that accounts between partners were not within the exception, as partners do not deal as merchants with each other, but as one merchant with others. Whether this doctrine as to partners be correct or not, the case still shows, that the court looked to the case of a traffic in merchandise, as the proper foundation of the account. In Crawfurd v. Liddel, cited in 6 Ves. 583, where the bill prayed an account of transactions under a patent for extracting oil from tar, and a plea of the statute was put in with an averment, that they were not "merchants' accounts," Lord Rosslyn allowed the plea as good. Indeed, it seems impossible to extend the exception to any other accounts than those, which concern the trade of merchandise, or buying and selling goods, without a departure from

the sense and import of the words, equivalent to an entire rejection of them.

There is yet another qualification in the exception, and that is, that the accounts must not only concern the trade of merchandise, but be "between merchant and merchant, their factors, or servants." Who is a merchant within the sense of the statute, it is not now necessary to consider (see Marston v. Cleypole, Bunb. 213; Bridges v. Mitchell, Id. 217; Sturt v. Mellish, 2 Atk. 612; Anon., Freem. Ch. 22; Murray v. Coster, 20 Johns. 576; 1 Mod. 270; 2 Ch. Cas. 132; Cranch v. Kirkman, Peake. 164; 2 Inst. 379); for the parties to the present suit are admitted to be merchants; and the question is, whether the present was a transaction between them as merchants, or as merchant and factor, coming within the other descriptive words of the exception. It appears to me very clear, that the present transaction is not a case within the exception of the statute. It is not a case of accounts concerning the trade of merchandise. The plaintiffs were not the owners of the goods sold; but Gray was the sole owner. He was not their factor to sell or dispose of them. The goods were his own, and shipped on board of the vessel of the plaintiffs, who had no interest in them; but were merely to be paid freight according to the ratio of the profits made upon the adventure. There was, as between the plaintiffs and Gray, no trade or traffic of merchandise; but a mere special contract to receive half profits in lieu of freight. That Gray might be compelled to account to them for the half profits, so far as to ascertain the freight, does not bring the case within the exception. A mere bailiff may be compelled to account, and so a bailee, or depository; but this does not bring the case within the exception. The matter to be accounted for must concern the traffic of merchandise between the parties. It must be a case, where there arise properly debits and credits between them, on sales, or purchases, of goods. Unless this limitation be adopted, the exception in the statute would cover all contracts, however special, between merchants, from which there might arise some accidental accountability on some pecuniary claim between them; a doctrine, which has never yet been broached, and would be subversive of the leading objects of the statute, the security of all persons against stale demands. Upon a special contract, like the present, there is no ground to assert, that an action of account, at the common law, would lie; for Gray was not chargeable either as bailiff, or as receiver of the goods or monies of the plaintiffs. What he received was for his own account. He was not even to pay any part of the money, received as half profits, to the plaintiffs. It was all his own. He was only liable upon his special contract, for a sum to be paid to the plaintiffs in lieu of freight, equal to the half profits. The half profits, as such, did not belong to the plaintiffs; they were referred to only as a mode of ascertaining the amount of freight, which might become due.

It has been argued, that the plaintiffs and Gray were partners in the transaction, because they were to divide the profits. But it is clear, that no partnership was contemplated between them. They were not to divide the profits as such. But the profits were merely a mode of ascertaining the compensation for freight. And it has been often held, that such a case does not constitute a partnership. Gow, Partn. 19, 20, etc.; Rice v. Austin, 17 Mass. 197, 206. It has been argued, that the master, being the consignee of Gray, may be deemed a factor; and that all the plaintiffs are liable, as his co-factors or joint contractors, for his acts as factor. But the case is not so. The contract with the plaintiffs as ship-owners, for the shipment of the cargo on half profits in lieu of freight, did not bind them for the acts of Andrew M. Spring, as factor of Gray, although he was one of the owners. The contract between him and Gray, as consignee, was as distinct, as if he had not been a part owner or master of the vessel. The ship-owners, as such, are only liable for the acts of each other as ship-owners, and of the master, as master. If another character or agency is superinduced, the acts of the party in that character are res inter alios acta, and they are in no wise responsible therefor. The acts of Andrew M. Spring, as factor, did not affect the other plaintiffs with any responsibility, or create a privity with him in that character. If the present case can be maintained as a case of accounts within the exception, then in all cases of special contract, where by any ingenuity an account may be raised, or where there may arise collaterally, any form of ultimate accountableness, all security from the statute is gone. The statute may be evaded at the option of the party. He has only to change, not the form of his remedy, but the form of his declaration, to declare upon an indebitatus assumpsit upon an account, instead of declaring specially in assumpsit upon the original contract, and the bar of the statute is demolished. In the present case, if the plaintiffs had declared in assumpsit upon the special contract according to the facts, the statute would have been a perfect bar to such a declaration; for, (as was justly observed by Jones, in the argument in 2 Saund. 125,) the exception is not of contracts, but of accounts. By declaring in the shape of an indebitatus assumpsit, upon an account arising upon the very same contract, and the very same facts, according to the argument pressed upon the court, the bar is defeated. Thus, the original contract is, or may be, extinguished, when it is specially set up as the foundation of a suit; and yet it will be deemed to subsist as a perfect title, when it is introduced collaterally, though it then constitutes the sole foundation of the suit. It will be dead in form and substance as a contract, but will revive in form and substance as an account. If these difficulties could be overcome, (and to me they seem insuperable,) the other considerations above alluded to would be of very great weight. Here, the account,

if any, was closed more than six years; it was not mutual; but all on one side. It was a single transaction, and open to all the objections, which weighed so strongly in Coster v. Murray, 5 Johns. Ch. 522; 20 Johns. 576, 582.

My judgment is, that the case established in evidence by the plaintiffs, is not sufficient to support the replication of merchants' accounts, and that the jury ought to find that issue for the defendants.

The district judge concurs in this opinion, and a direction will therefore be given to the jury accordingly.

The jury gave a verdict for the defendants upon the issue upon the replication; and gave no verdict upon the general issue, as it was thought unnecessary, the former amounting to a bar of the action.

[The judgment of this court was affirmed by the supreme court, where it was carried by writ of error. 6 Pet. (31 U. S.) 151.]